LETTIE W. HUGHES v. KENDALL GENE LUNDSTRUM
— AND —
TONY JAMES HUGHES, BY HIS NEXT FRIEND, LETTIE W. HUGHES v.
KENDALL GENE LUNDSTRUM

No. 695SC333

(Filed 23 July 1969)

1. Trial § 15— objection to evidence — voir dire hearing

Upon suggestion of opposing counsel that the testimony of plaintiff on direct examination was incompetent in that on a previous trial plaintiff had admitted on cross-examination that the matters being testified to were not within his knowledge, trial court properly interrupted the examination of plaintiff and conducted a *voir dire* hearing in the absence of the jury to determine the admissibility of the proffered evidence.

2. Appeal and Error § 49; Witnesses § 7— error in exclusion of evidence — witness' loss of memory

Any error in trial court's exclusion of testimony by plaintiff that his memory was not as good six months or a year after an automobile accident as it was two years later at the trial arising out of the accident, *is held* cured when plaintiff is allowed to testify (1) that he suffered loss of memory as to portions of the accident a few months after the accident occurred and (2) that when he was adversely examined by defendant a year after the accident he did not recall but two-thirds of the facts pertaining to the accident.

3. Automobiles § 45— automobile accident — relevancy of evidence — plaintiff's pre-accident conduct

In plaintiff passenger's action to recover for injuries received when the automobile driven by defendant ran across railroad tracks at an excessive rate of speed and went out of control, trial court properly admitted defendant's testimony that (1) prior to the accident plaintiff asked him for a ride in defendant's Corvette automobile in order "to see how my car turned on in comparison with his" and that (2) at the time plaintiff made his request plaintiff was driving his own automobile and was accelerating rapidly at the change of a stop light.

4. Automobiles § 92— injury to passenger — wilful or wanton negligence — sufficiency of evidence

In plaintiff passenger's action to recover for injuries received when the automobile driven by defendant ran across railroad tracks at an excessive rate of speed and went out of control, trial court properly refused to submit to the jury the issue of wilful and wanton negligence on the part of defendant, where plaintiff's evidence was to the effect that on the night of the accident plaintiff and defendant struck up an acquaintance at a drive-in, that they both had an interest in automobiles and drag racing, that after nearly five hours of drinking beer and discussing automobiles plaintiff requested defendant to take him on a ride in defendant's Corvette, that plaintiff knew the road on which they were traveling narrowed from a three-lane highway to a two-lane highway at a point where the road crossed the railroad tracks, and that although plaintiff knew de-

fendant was unfamiliar with these road conditions he did not warn defendant but instead urged him "to turn it on."

APPEAL by plaintiffs from *Peel, J.,* 16 February 1969, Civil Session, NEW HANOVER County Superior Court.

Lettie W. Hughes instituted a civil action to recover for the loss of earnings of her son, Tony James Hughes (Tony), during his minority and for the medical expenses incurred by her for the treatment of personal injuries sustained by him in an automobile accident. Tony instituted a civil action by his next friend to recover damages for the personal injuries. The two cases were consolidated for purposes of trial.

In his amended complaint, Tony alleged that Kendall Gene Lundstrum (defendant) was driving his 1961 Chevrolet Corvette automobile (Corvette) in such a manner as to constitute "wilful and wanton negligence, purposely and deliberately in violation of the motor vehicle laws of North Carolina, and with the deliberate purpose not to discharge the duty necessary to the safety of his passengers, and with a wicked purpose to endanger his passengers, needlessly and with a reckless indifference to the rights of his passengers."

In his amended answer, the defendant denied any negligence and pleaded contributory negligence on the part of Tony "in that he knowingly begged, pleaded and cajoled with the defendant to show [him] how fast the defendant's car would go, even though [he] knew at the time he was urging the defendant to go faster that the road decreased from three lanes to two lanes and entered a relatively narrow bridge at the end of a curve and [he] further knew that . . . defendant was not familiar with the road at the point at which the collision occurred."

The evidence revealed that, about 6:30 p.m. on 7 May 1967, Tony and a male companion, Daryl Howard (Daryl), went to the Chic Chic Drive-In Grill in the City of Wilmington, New Hanover County; they saw an automobile in the parking lot with two girls in the front seat, and, since they knew the girls, they got into the rear seat; while sitting in this automobile, they observed the Corvette, which was parked next to them. The Corvette was occupied by the defendant and a companion, Earl Bucko (Bucko), both of whom were members of the United States Marine Corps stationed at Camp Lejeune, North Carolina. Although Tony did not know either occupant, he got out of the girls' automobile and went over to the Corvette. He immediately told the defendant how much he liked

his automobile and thus began an extended conversation with regard to cars. It developed that both Tony and the defendant were interested in automobiles and drag racing. The defendant and Bucko left the Corvette and joined Tony and Daryl, and the four proceeded in Tony's automobile to another drive-in grill some five miles away. They spent nearly five hours drinking beer at this second grill and talking about automobiles. They discussed engines, bodies, makes, models, speed, the respective speeds of their vehicles, drag racing and racing cars. Tony testified:

> "I talked about speed, about watching people race on drag strips and things of that sort."

> "I told him that I had raced my car and worked on it, fixed different things that had torn up about it, and things like that."

Tony knew that the Corvette had four forward gears and that it was designed for speed, greater pickup and more rapid acceleration, which are important factors in drag racing. Since he had never ridden in a Corvette automobile and since he was anxious to do so, Tony requested the defendant to take him for a ride. The four thereupon returned to the place where the Corvette had been left. While Bucko remained in Tony's automobile, the defendant took Tony and Daryl for a demonstration drive. The Corvette's two seats were of the bucket type. Tony was in the passenger's seat and the defendant was in the driver's seat. Daryl was seated between them on the console.

At this time, Tony knew that the defendant was from the State of Michigan; he was in North Carolina with the Marine Corps; and he was not generally familiar with the area around Wilmington.

The defendant drove in a northerly direction for about four miles. He then turned the Corvette around and started back in the direction of Wilmington on U. S. Highway No. 117. The road on which they were traveling had three lanes and it was approximately 33 feet in width. As a vehicle proceeded in a southerly direction and when it was approximately 100 yards from the bridge crossing Smith Creek where the accident occurred, the road went across some railroad tracks at grade. The road then decreased in width from 33 feet at the grade crossing to 27 feet at the bridge entrance. The bridge was 27 feet wide. There was a curve between the grade crossing and the bridge.

Tony was familiar with the road, grade crossing, curve and bridge. However, he did not advise the defendant about this curve, the railroad tracks or the decreased width because the defendant

had driven over the road just shortly before when they were going out of town, and Tony assumed that he remembered it.

Tony testified that the defendant was driving at a normal rate of speed until they approached the railroad tracks at which point he accelerated to approximately 80 miles per hour. Tony based this estimation upon seeing the lines in the road rushing by. When the automobile hit the railroad tracks, the defendant lost control and the vehicle started "fishtailing, the rear end started trying to catch up with the front." The vehicle struck the bridge on the northeast corner. Tony, who remembered nothing about striking the bridge, was thrown out of the Corvette, thereby sustaining personal injuries.

The trial judge submitted issues of negligence, contributory negligence and damages to the jury. The issues of negligence and contributory negligence were answered in the affirmative. A judgment was entered in each case that the plaintiff have and recover nothing of the defendant. Both plaintiffs thereupon excepted and appealed to this Court.

*James, James & Crossley by John F. Crossley and J. C. Wessell, Jr., for plaintiff appellants.*

*W. G. Smith for defendant appellee.*

CAMPBELL, J.

[1]    The first assignment of error was to the action of the trial judge in interrupting the direct examination of the plaintiff in order to permit defense counsel to conduct a *voir dire* examination in the absence of the jury. At the time plaintiff was in the process of describing to the jury what occurred immediately prior to the automobile striking the bridge. The defense counsel interrupted and suggested to the judge that on a previous trial, the plaintiff had testified pertaining to the accident and then on cross-examination had stated that he did not know those things of his own knowledge and the testimony had been stricken. The Court suggested that the *voir dire* examination be conducted in order to eliminate any incompetent testimony by the plaintiff.

In this, there was no error, for the trial judge, in the interest of a fair and impartial trial, must frequently conduct *voir dire* examinations in order to eliminate incompetent and prejudicial testimony before the jury which might otherwise necessitate a mistrial.

**[2]**    The second assignment of error was to the refusal of the trial
court to permit the plaintiff to testify that his memory was not as
good six months or a year after the accident as it was at the time
of the trial. Any error in this regard was cured, however, by the
fact that the court did permit the plaintiff to testify that when
he was adversely examined in July 1968 by the defendant, he did
not recall but about two-thirds of the facts pertaining to the acci-
dent. He was permitted then to testify that he was able to recall
more now than he was at the time "because my memory came back
to me". The plaintiff also testified, "Well when you have a loss of
memory, well my loss of memory, after the accident a few months
after the accident I could remember portions of it but not all of it
and then as I familiarized myself with the area where the accident
happened and thinking about it constantly, it comes back to me like
pieces to a puzzle or something." Plaintiff also testified as to the
length of time that he remained unconscious and his various head
injuries.

The evidence which was thus admitted, eliminated any prejudicial
effect of the evidence which the plaintiff was not permitted to tes-
tify. There is no merit in this assignment of error.

**[3]**    The third assignment of error by the plaintiff was to the effect
that the trial court permitted the introduction of evidence as to the
manner in which the plaintiff drove his automobile during the early
part of the evening just prior to the accident.

In this regard, the plaintiff was asked on cross-examination
whether he tried to induce drivers of other vehicles to race with
him when he was driving the defendant across the City of Wilming-
ton in the plaintiff's automobile in order to show the defendant how
his automobile operated and to compare its speed with the speed of
the Corvette. The defendant denied that he had endeavored to get
others to race with him. He did admit, however, that he talked
about the speed of his automobile when he was racing it. He de-
nied, however, doing anything to demonstrate its speed to the de-
fendant. The defendant testified over objection that the plaintiff
requested him to take the plaintiff for a ride in the Corvette, and
that the plaintiff "said he would like to see how my car turned on
in comparison with his". The defendant also testified that when this
conversation took place, the plaintiff was driving the plaintiff's au-
tomobile, and that he would drive up to a stop light and then would
accelerate fast when the light changed.

All of this evidence was relevant and material to show the
background of what had been going on between the plaintiff and the

defendant with regard to testing and demonstrating automobiles and their respective speeds and ability to accelerate shortly before the accident.

There is no merit in this assignment of error.

The fourth assignment of error was to the effect that the defendant was permitted to cross-examine his own witness.

This assignment of error is directed to the fact that sometime prior to the trial the defendant had taken the deposition of Earl Bucko, a witness for the defendant whose testimony the defendant desired to preserve in the event the witness could not be present for the trial. This witness was the defendant's companion at the time the defendant became acquainted with the plaintiff. The witness Bucko was present at the trial and testified on behalf of the defendant.

On cross-examination of this witness, plaintiff questioned him about the deposition and some of the testimony contained in the deposition. On redirect examination, this witness was asked if he recalled some of the questions that defendant's attorney had asked him at the time of the deposition, and his answers thereto. The court restricted this testimony to corroboration of the witness Bucko in the event that the jury found that it did corroborate him. This testimony did not constitute a cross-examination of the witness Bucko, and it having been restricted to the purpose of corroboration, there was no error.

This assignment of error is without merit.

**[4]**    The fifth assignment of error was to the refusal of the court to submit an issue of willful and wanton negligence on the part of the defendant. Such an issue was tendered in apt time by the plaintiff, and the court refused to submit same.

The evidence on behalf of the defendant was to the effect that the plaintiff asked him several times to take him for a ride in the Corvette automobile in order that the plaintiff would have an opportunity to see it and experience a ride in it as the plaintiff had never ridden in a Corvette. The defendant at first refused to do so, but finally acceded to the request of the plaintiff. He took the plaintiff out for a demonstration and was requested on this trip on at least two occasions "to turn it on", and by that it was meant to speed it up. When requested the last time to "turn it on", the defendant was then driving about 60 or 65 miles per hour. Pursuant to this request, the defendant stated, "I just kicked it" meaning "I stepped on the accelerator". At that time, he did not know how close he was to the bridge. In the language of the defendant:

"Well, it accelerated and I saw the bridge coming up and I felt a bump, I didn't know what it was, but the back end of the car started drifting.

.  .  .

Well, there is a curve there and the back end of the car started sliding to the right.

.  .  .

Well, I tried to correct it with the steering.

.  .  .

Before I knew it the road narrowed down to two lanes and I was in the outside lane and I didn't realize that the lane ended before the bridge, and to get on the bridge, I would have had to move one complete lane almost to the left and the car was drifting to [*sic*] badly to make that much of a correction.

.  .  .

I struck the bridge.

.  .  .

. . . everything went black, there was a lot of noise, I don't actually remember striking the bridge, the next thing I remember was sliding down the road on my back."

The defendant testified that he did not apply the brakes as that would accentuate the skidding and that he tried to get out of the skid by turning the front wheels in the direction of the skid, but that he did not have time to do so.

All of the evidence in this case taken in the light most favorable to the plaintiff reveals two young men very much interested in automobiles, particularly with regard to the speed of automobiles and the respective performance of automobiles with regard to rapid acceleration. They had discussed these matters for nearly five hours. The plaintiff was familiar with the area where the automobile was being driven; knew that the particular automobile was designed for high speed and rapid acceleration; knew that the driver was not familiar with the area' and the road conditions. With this background and knowledge, plaintiff still urged the defendant driver to demonstrate the Corvette automobile. The defendant driver did do as requested. Did this constitute willful and wanton negligence?

In *Wagoner v. R. R.*, 238 N.C. 162, 77 S.E. 2d 701 we find:

" 'The term "wanton negligence" . . . always implies something more than a negligent act. This Court has said that the word "wanton" implies turpitude, and that the act is committed

or omitted of willful, wicked purpose; that the term "willfully" implies that the act is done knowingly and of stubborn purpose, but not of malice . . . Judge Thompson says: "The true conception of willful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the person owing it has assumed by contract or which is imposed on the person by operation of law. Willful or intentional negligence is something distinct from mere carelessness and inattention, however gross. We still have two kinds of negligence, the one consisting of carelessness and inattention whereby another is injured in his person or property, and the other consisting of a willful and intentional failure or neglect to perform a duty assumed by contract or imposed by operation of law for the promotion of the safety of the person or property of another." Thompson on Neg. (2d Ed.), Sec. 20, et seq.' Bailey v. R. R., 149 N.C. 169, 62 S.E. 912.

To constitute willful injury there must be actual knowledge, or that which the law deems to be the equivalent of actual knowledge, of the peril to be apprehended, coupled with a design, purpose, and intent to do wrong and inflict injury. A wanton act is one which is performed intentionally with a reckless indifference to injurious consequences probable to result therefrom. Ordinary negligence has as its basis that a person charged with negligent conduct should·have known the probable consequences of his act. Wanton and willful negligence rests on the assumption that he knew the probable consequences, but was recklessly, wantonly or intentionally indifferent to the results. Everett v. Receivers, 121 N.C. 519, 27 S.E. 991; Ballew v. R. R., 186 N.C. 704, 120 S.E. 334; Foster v. Hyman, supra; S. v. Stansell, 203 N.C. 69, 164 S.E. 580; 38 Am. Jur., Negligence, Sec. 48.

'In strictly accurate use, the terms "willfulness" and "wantonness" express different ideas and are clearly distinguishable, the distinction resting chiefly in the nature and extent of intent involved. It has been said that "the difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not." ' 65 C.J.S., Negligence, p. 379."

It was not error under the facts of this case, for the trial court to refuse to submit the issue of willful and wanton negligence tendered by the plaintiff.

Plaintiff relies upon the case of *Pearce v. Barham,* 271 N.C. 285, 156 S.E. 2d 290 in support of the proposition that an issue of willful and wanton negligence should have been submitted to the jury. The *Pearce* case is clearly distinguishable on its facts from the case *sub judice.* The charge of the court to the jury in the instant case was not brought forward and no error was assigned to any portion of the charge.

We find from the record as a whole that the plaintiff received a fair and impartial trial, and the case was submitted to the jury upon the issues raised by the pleadings and the evidence and under a charge to which no error has been assigned. In the trial we find

No error.

BROCK and MORRIS, JJ., concur.