SAM ZAHREN AND WIFE LUCY I. ZAHREN v. THE MAYTAG COMPANY AND HOLMES ELECTRIC, INC.

No. 7712SC160

(Filed 11 July 1978)

1. **Evidence § 40; Sales § 14.1— clothes dryer—negligent manufacture—breach of warranty—procedures of manufacturer—personal knowledge of witness**

   In an action to recover for the negligent manufacture of a clothes dryer and for breach of warranties of merchantability and fitness of the dryer, the supervisor of quality control for defendant manufacturer was properly allowed to testify as to who made the allegedly defective thermostats for the manufacturer, the operating temperature of the thermostats, testing and inspection procedures employed by the manufacturer, and whether the thermostats and dryer were UL approved, where the supervisor was testifying from his own personal knowledge.

2. **Witnesses § 1; Trial § 15— inconsistent testimony—competency of witness—denial of voir dire—harmless error**

   Error, if any, in the trial court's denial of a motion to conduct a voir dire to determine a witness's personal knowledge of defendant's testing procedures about which he testified, made after the witness gave inconsistent testimony as to his familiarity with the procedures, was rendered harmless when the witness on redirect examination testified that he had set up the testing procedures which he described and had observed their performance.

3. **Evidence § 49.1— expert testimony—hypothetical question—photographs and testimony presented by plaintiff**

   Defendants' expert was properly allowed to answer a hypothetical question which included his opinion from an examination of photographs taken by plaintiffs' expert, testimony by plaintiffs' expert, and testimony by the female plaintiff.

4. **Evidence § 49— expert opinion—hypothetical question—explanation of opinion**

   The trial court did not err in permitting defendants' expert, who had given his opinion in response to a hypothetical question, to explain how he arrived at his opinion.

5. **Negligence § 37— instructions—"alleged and contended"**

   It was not error for the court to fail to instruct that plaintiffs "alleged and contended" certain negligence.

6. **Sales § 22— absence of fail-safe device on clothes dryer—no negligence by manufacturer**

   The trial court did not err in failing to instruct the jury that the failure of the manufacturer of a clothes dryer to install a "fail-safe" device on the dryer could constitute negligence.

**7. Sales § 23— clothes dryer—no dangerous instrumentality**

    The trial court did not err in failing to instruct that a clothes dryer was a dangerous instrumentality and to instruct on the duties of a defendant who manufactures such a dangerous instrumentality.

**8. Sales § 22— fire in clothes dryer—vapors from outside dryer—instructions— inference from evidence**

    In an action to recover damages caused by a fire in a clothes dryer, the trial court's instruction that defendant manufacturer was not liable if plaintiffs' damages were caused by volatile vapors or another substance being pulled into the dryer from an outside source was supported by legitimate inferences from the evidence presented although there was no direct testimony of any observation of such vapors or substance.

APPEAL by plaintiffs from *Herring, Judge.* Judgment entered 28 October 1976 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 10 January 1978.

The facts giving rise to this lawsuit can be briefly summarized as follows: On or about 10 April 1972, plaintiffs purchased from defendant Holmes Electric, Inc. of Fayetteville, an electric clothes dryer manufactured by defendant Maytag Company. The dryer was installed in plaintiffs' home in Fayetteville by Holmes Electric. From 10 April 1972 to 23 February 1973, plaintiffs experienced no problems with the Maytag dryer.

On 23 February 1973, Mrs. Zahren put a load of sheets and towels in the dryer and went upstairs in her house. When she came back downstairs, she smelled something burning. She cut off the dryer, opened its door, and found the fabrics inside of the tumbler tub of the dryer in flames. She grabbed a burning towel and took it to her kitchen to extinguish it. By the time she returned to the dryer, the fire had spread to an adjoining sofa and ultimately caused extensive damage to plaintiffs' home.

In their complaint plaintiffs alleged negligence of defendant Maytag in several respects, including, *inter alia,* negligence in the design, construction and testing of two thermostats and a clock motor which allegedly malfunctioned and allowed the dryer to overheat and cause ignition of fabrics inside of the tumbler, negligence in the failure to provide fail-safe devices, and negligence in the failure to provide adequate warning as to the danger of the dryer overheating. Plaintiffs' complaint further alleged that both defendants breached implied warranties of merchantability and fitness of the dryer.

At the trial of the case, the issues submitted to the jury without objections were the negligence of defendant Maytag and breach as to both defendants of the implied warranties of merchantability and fitness for ordinary purpose. The jury answered the issues in favor of the defendants, finding that plaintiffs were not damaged by negligence of defendant Maytag, that both defendants had impliedly warranted the dryer but that there was no breach of the implied warranties by either defendant.

From judgment that they have and recover nothing of defendants, plaintiffs appeal.

*Anderson, Broadfoot & Anderson, by Henry L. Anderson, Jr., for the plaintiffs.*

*Nance, Collier, Singleton, Kirkman & Herndon, by James R. Nance, Jr., for defendant The Maytag Company.*

*Berry & Caudle, by H. Dolph Berry, for defendant Holmes Electric, Inc.*

BROCK, Chief Judge.

[1] Plaintiffs' first assignment of error is based upon 16 exceptions to the testimony of Gerald Weaver, supervisor of quality control engineering for defendant Maytag, and requires little discussion. Weaver was permitted to testify, over objections, as to whom manufactured the allegedly defective thermostats for Maytag, as to testing and inspection procedures employed by Maytag in 1972, as to operating temperatures of the thermostats as indicated by numbers printed thereon, and as to whether the thermostats and the Maytag dryer were UL approved. Plaintiffs' contention, basically, is that the witness was incompetent to testify as to these matters, as they did not constitute facts within his personal knowledge. However, contrary to plaintiffs' assertion, it is clear from the record that Mr. Weaver testified from his own personal knowledge. He was admonished on several occasions by the trial court to answer only of his own personal knowledge. On other occasions, questions directed to Mr. Weaver were prefaced with "Do you know . . ." and received affirmative responses. Plaintiffs failed to show, on cross-examination or otherwise, that the witness was not competent to testify on these matters.

**[2]**  Plaintiffs also contend that the trial court erred in denying their motion to conduct a *voir dire* of Mr. Weaver on his personal knowledge of 1972 testing procedures for thermostats. The witness at one point had testified that he was not familiar with Maytag's inspection system for purchase parts in 1972. Later he stated that he was familiar with Maytag's testing procedures for thermostats during 1972. It was at this point that plaintiffs moved to *voir dire* the witness in light of his inconsistent testimony. This motion having been denied, the witness was allowed to testify as to the testing procedures. Still later, Mr. Weaver testified on redirect examination that during 1972 he was a quality control engineer for Maytag and had set up the testing procedures which he had described on direct examination and had observed their performance. Although the trial court clearly had the authority to allow the *voir dire* which plaintiffs requested, *see Hughes v. Lundstrum*, 5 N.C. App. 345, 168 S.E. 2d 686 (1969), the error, if any, in its denial was clearly rendered harmless by the witness' testimony on redirect.

Plaintiffs argue only the competency of the witness himself and not the competency or relevance of the matters to which he testified. Having determined that Mr. Weaver was a competent witness as to the testimony challenged by the plaintiffs, the first assignment of error is overruled.

By their second assignment of error plaintiffs argue that much of the testimony of defendants' expert witness, Hinkle, was incompetent and prejudicial. Obviously Hinkle's testimony was highly prejudicial to plaintiffs' efforts to establish negligence or breach of implied warranty, but that does not render it incompetent. We shall explore only the competency of the challenged testimony.

Dr. Hinkle was qualified and permitted to testify as an expert in physical science and fire analysis. There is no controversy but that this was proper.

Plaintiffs undertake to argue their exception number 17 regarding certain testimony of Hinkle. While it is true that the court first overruled plaintiffs' objection, after a conference at the bench the court sustained the objection. This renders the matter academic and we decline to discuss it.

[3]  Plaintiffs argue that it was error to allow defendants' expert, Hinkle, to answer a hypothetical question which included his opinion from "an examination of the photographs taken at the scene by Mr. Wallace, testimony of Mrs. Zahren and the testimony of Mr. Wallace."

The photographs in question were taken by plaintiffs' expert, Wallace, described by him in detail, and introduced by plaintiffs into evidence. Defendants' expert, Hinkle, testified that he had examined the photographs in detail, that he heard all of the testimony of Mrs. Zahren and Mr. Wallace, and that he did not dispute what they did or what they saw. The exhibits and the testimony were already before the jury, and defendants' expert, Hinkle, obviously took plaintiffs' entire factual evidence into consideration in rendering his opinion. He merely arrived at a different conclusion. We find no merit in plaintiffs' argument upon this point.

[4]  Plaintiffs argue that it was error to allow defendants' expert, Hinkle, "to testify as to the basis of his opinion after having previously given that opinion in response to a hypothetical question." Plaintiffs argue that the expert did not base his opinion on the evidence referred to in the hypothetical. We disagree. The defendants' witness merely explained how he arrived at his opinion from an examination of the factual evidence already offered by plaintiffs.

The remaining arguments of plaintiffs under this assignment of error assume error in the admission of defendants' expert's opinion in response to their hypothetical question. We having already determined that plaintiffs' exception to the hypothetical question is without merit, we hold that the remaining arguments in this assignment of error are likewise without merit. Plaintiffs' assignment of error number 2 is overruled.

Plaintiffs' remaining assignments of error are related to the trial court's instructions to the jury.

[5]  Under assignment of error number 3 in all but one instance plaintiffs argue that it was error for the court to fail to instruct the jury that plaintiffs "alleged and contended" certain negligence. We find no merit in these arguments. The court is required to state the evidence sufficiently to permit it to apply the

law thereto. It is not required to state the allegations of the parties. It is not required to state the contentions of the parties, although if it does it must give equal stress to the contentions of the various parties. There is no argument that equal stress was not given in the contentions that were stated.

[6] Under this same assignment of error plaintiffs argue that it was error for the court not to instruct that the failure of defendant Maytag to install a "fail-safe" device on the machine could be negligence. The only evidence about a "fail-safe" device came from the testimony of plaintiffs' expert, Wallace. This same witness testified that he had never seen a dryer with a "fail-safe" device, and did not know of any standard that would require a "fail-safe" device on a clothes dryer. There was absolutely no evidence to support a finding that failure to install a "fail-safe" device on a clothes dryer could be negligence. The trial court was correct in not so instructing the jury. Plaintiffs' assignment of error number 3 is overruled.

[7] Under assignment of error number 4 plaintiffs argue that it was error for the trial court to fail to instruct that a clothes dryer was a dangerous instrumentality and the duties of a defendant who manufactures a dangerous instrumentality. There was absolutely no evidence to support such a charge and the trial judge was correct in not doing so. The only testimony concerning a dangerous instrumentality came from plaintiffs' expert, Wallace. He stated: "My opinion is that a drier equipped with two thermostats that are defective, can't be anything but a dangerous machine." This is a far cry from evidence to support an instruction that the manufacture of a clothes dryer is the manufacture of a dangerous instrumentality. Plaintiffs' assignment of error number 4 is overruled.

[8] Under assignment of error number 5 plaintiffs argue that the following instruction was unsupported by evidence:

"Now I instruct you that if you should find that the alleged buyer damage sustained by the plaintiffs and other damage was proximately caused by volatile vapors or some other substance being pulled into the clothers drier from an outside source, then such would not constitute negligence in this case even if there was a failure on the part of the manufacturer to exercise due care in the manufacture of the drier."

Plumbing Co. v. Associates

We disagree. While there is no direct testimony of observation of such vapors or substance being pulled into the dryer from an outside source, clearly these are legitimate inferences which could be drawn from the evidence presented. Plaintiffs' assignment of error number 5 is overruled.

Assignments of error numbers 6, 7 and 8 have been reviewed and considered. We do not feel that a discussion would be of any value to the bench or bar. In our opinion the case was presented to the jury under applicable principles of law, the jury understood its duties, and the results were just although disappointing to the plaintiffs. The whole case depended upon the credit the jury might give to the testimony of plaintiffs' expert and of defendants' expert. Apparently the jury chose to rely on the testimony of defendants' expert.

No error.

Judges VAUGHN and ERWIN concur.