NANCY H. SIDERS v. LARRY WAYNE GIBBS

No. 7814SC155

(Filed 19 December 1978)

1. **Automobiles § 95.2; Negligence § 7 — willful and wanton negligence — negligence imputed to passenger-owner — no bar to recovery**

    Even though plaintiff who was a passenger in her own vehicle would ordinarily be barred from any recovery against defendant who struck plaintiff's vehicle because of the imputed contributory negligence of the driver of her vehicle, plaintiff could nevertheless recover if she could show willful and wanton negligence on the part of the defendant.

### 2. Negligence § 7— willful and wanton negligence defined

The concept of willful and wanton negligence encompasses conduct which lies somewhere between ordinary negligence and intentional conduct; willful negligence arises from the tortfeasor's willful breach of a duty arising by operation of law, while wanton negligence arises from an act done of wicked purpose or done needlessly which manifests a reckless indifference to the rights of others.

### 3. Automobiles § 91.3— drunk driver—willful and wanton negligence—sufficiency of evidence

In an action to recover for personal injuries sustained by plaintiff in an automobile accident, evidence was sufficient to require submission to the jury on the issue of willful and wanton negligence where it tended to show that the collision occurred at night in a 35 mph zone along a street which had a level, smooth, dry surface; defendant was travelling between 60 and 80 mph in the westbound lane and struck plaintiff's vehicle in the eastbound lane; there was testimony that, shortly before the collision, defendant was so drunk that he kept falling against his car; because of alcoholic consumption, defendant's speech was noticeably affected and he had difficulty keeping his eyes open while talking; and defendant was told that he was too drunk to drive.

APPEAL by plaintiff from *Hobgood, Judge*. Judgment entered 23 August 1977 in Superior Court, DURHAM County. Heard in the Court of Appeals 15 November 1978.

This action arose out of an automobile collision which occurred on 7 April 1974 at approximately 9:05 p.m. on Green Street in Durham. Plaintiff, now Nancy Siders Harris, was a passenger in her own automobile which, with her permission, was being driven by Ralph L. Young. She was seated in the back seat on the driver's side. Young stopped to pick up Gloria Hamacher Anthony on the corner of Green Street and Ninth Street and then proceeded westward on Green Street. Before reaching the intersection of Green Street and Virgie Street, Young attempted a three-point turn in the street to enable him to reverse his direction and drive eastward on Green Street. Before the turn was completed, plaintiff's car was struck on the driver's side by defendant's car, causing severe damage to each vehicle and personal injury to the plaintiff.

At trial, defendant Gibbs moved for a directed verdict at the close of plaintiff's evidence on the grounds of contributory negligence imputed to plaintiff as the owner of the automobile being driven by Ralph L. Young. The motion was allowed and judgment was entered against the plaintiff. From the entry of judgment granting a directed verdict plaintiff appeals.

Other facts necessary for decision are summarized in the opinion below.

*Grover C. McCain, Jr., for plaintiff appellant.*

*Haywood, Denny & Miller, by George W. Miller, Jr., for defendant appellee.*

MORRIS, Chief Judge.

This appeal brings this case before the Court for the fourth time.[1] For consideration now is whether there was sufficient evidence of willful and wanton negligent conduct on the part of defendant to carry the case to the jury and survive defendant's motion for directed verdict. The question of whether the driver of plaintiff's automobile was negligent in attempting a three-point turn on Green Street is not before us. Furthermore, plaintiff does not contend that it is error in this case to impute the negligence of the driver to the plaintiff because of her status as a passenger in her own car. This principle of imputed negligence arises from the rebuttable legal presumption that, in the absence of evidence to the contrary, the owner/passenger maintains the right to control and direct the operation of the automobile. *Randall v. Rogers,* 262 N.C. 544, 138 S.E. 2d 248 (1964).

[1]  Therefore, plaintiff ordinarily would be barred from any recovery against defendant because of the imputed negligence of the driver. *Hearne v. Smith,* 23 N.C. App. 111, 208 S.E. 2d 268 (1974), *cert. den.,* 286 N.C. 211, 209 S.E. 2d 315 (1974). Nevertheless, the established rule allows recovery where plaintiff is able to show willful and wanton negligence on the part of defendant. *Fry v. Utilities Co.,* 183 N.C. 281, 111 S.E. 354 (1922).

It is a fundamental proposition that in ruling upon a motion by defendant for a directed verdict the court must take the plaintiff's evidence as true and consider it in the light most favorable to the plaintiff. *Farmer v. Chaney,* 292 N.C. 451, 233 S.E. 2d 582 (1977); *Oliver v. Royall,* 36 N.C. App. 239, 243 S.E. 2d 436 (1978). Therefore, the record must be carefully scrutinized to determine whether there is evidence which, if believed by the jury and thereby accorded full credibility, would establish facts sufficient

---

1. See previous opinions: *Siders v. Gibbs,* 31 N.C. App. 481, 229 S.E. 2d 811 (1976); *Siders v. Gibbs,* 29 N.C. App. 540, 225 S.E. 2d 133 (1976); and *Siders v. Gibbs,* 26 N.C. App. 333, 215 S.E. 2d 813 (1975).

to constitute willful and wanton negligence. If the facts are such that reasonable men could differ upon whether the negligence amounted to willful and wanton conduct, the question is generally preserved for the jury to resolve. *See generally* 1 Blashfield Automobile Law and Practice § 67.5; *Cf. Robinson v. McMahan,* 11 N.C. App. 275, 181 S.E. 2d 147 (1971) (negligence generally question for jury).

[2] The concept of willful and wanton negligence encompasses conduct which lies somewhere between ordinary negligence and intentional conduct. The state of mind of the actor responsible for willful and wanton negligence has been described by a leading commentator as lying within the penumbra of what is called "quasi intent". Prosser, Torts § 34 (4th Ed.). Although the terms "willful" and "wanton" are commonly used conjunctively to describe negligence of an aggravated nature, our courts have attempted to distinguish the concepts. *See e.g., Wagoner v. R.R.,* 238 N.C. 162, 77 S.E. 2d 701 (1953).

A most helpful discussion of the concepts of "willful" negligence and "wanton" negligence can be found in *Foster v. Hyman,* 197 N.C. 189, 148 S.E. 36 (1929), an appeal from a judgment which provided for execution against the person of the defendant/judgment debtor. Execution against the person can issue where the judgment is supported by pleadings and evidence sufficient to find that the tort was willfully committed. The Court summarized the law of willful negligence as follows:

"An act is done wilfully when it is done purposely and deliberately in violation of law (*S. v. Whitener,* 93 N.C., 590; *S. v. Lumber Co.,* 153 N.C., 610), or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason. *McKinney v. Patterson, supra.* 'The true conception of wilful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the person owing it has assumed by contract, or which is imposed on the person by operation of law.' Thompson on Negligence (2 ed.), sec. 20, quoted in *Bailey v. R.R.,* 149 N.C., 169." 197 N.C. at 191, 148 S.E. at 37.

The Court was concerned with the subtle distinction which must be drawn between willful negligence and an intentional tort.

Willful negligence arises from the tort-feasor's willful breach of a duty arising by operation of law. *Id.* The tort-feasor must have a deliberate purpose not to discharge a legal duty necessary to the safety of the person or property of another. *Wagoner v. R.R., supra;* Thompson on Negligence § 20 *et seq.* (2d Ed.). This willful and deliberate purpose not to discharge a duty differs crucially for our purposes from the willful and deliberate purpose to inflict injury—the latter amounting to an intentional tort. *Foster v. Hyman, supra.* The *Foster* case has recently been quoted at length and cited with apparent approval by our Supreme Court in *Brewer v. Harris,* 279 N.C. 288, 182 S.E. 2d 345 (1971).

Some confusion in the application of this distinction arises because of language in our Supreme Court's decision in *Wagoner v. R.R., supra,* which was quoted by this Court in *Hughes v. Lundstrum,* 5 N.C. App. 345, 168 S.E. 2d 686 (1969). To the extent that decision requires that willful conduct include an intent to inflict injury, it is apparent that it must be read to refer to "constructive intent" as discussed in *Foster v. Hyman, supra; see also Ballew v. R.R.,* 186 N.C. 704, 120 S.E. 334 (1923). Otherwise, "willful negligence" becomes a self-contradictory term. Such contradiction in terms has been recognized by some other jurisdictions. *See Kelly v. Malott,* 135 F. 74 (7th Cir. 1905); *Michels v. Boruta,* 122 S.W. 2d 216 (Tex. Civ. App. 1938). "[T]he idea of negligence is eliminated only when the *injury* or *damage* is intentional. *Ballew v. R.R.,* 186 N.C., 704, 706." *Foster v. Hyman,* 197 N.C. at 191, 148 S.E. at 38.

The application of the concept of wanton conduct has presented less difficulty to the courts. "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (quoted in *Wagoner v. R.R., supra*). The Court in *Wagoner v. R.R., supra,* made the following observation:

> " 'We still have two kinds of negligence, the one consisting of carelessness and inattention whereby another is injured in his person or property, and the other consisting of a willful and intentional failure or neglect to perform a duty assumed by contract or imposed by operation of law for the promotion of the safety of the person or property of another.' (Citations omitted.)" 238 N.C. at 168, 77 S.E. 2d at 706.

We now apply these principles to the evidence before us to determine whether plaintiff produced evidence which, if believed by the jury, could support a finding that defendant was guilty of willful and wanton negligence.

Plaintiff, in arguing that there was sufficient evidence to go to the jury on the issue of willful and wanton negligence, cites *Brewer v. Harris, supra,* and *Pearce v. Barham,* 271 N.C. 285, 156 S.E. 2d 290 (1967), in support of her contentions. Defendant argues those cases are distinguishable and contends that this Court's decision in *Hughes v. Lundstrum, supra,* is controlling. Because the facts of each case are determinative, it is appropriate to summarize briefly the facts of those cases, applying the concept of willful and wanton negligence.

In *Brewer v. Harris, supra,* the Supreme Court, in affirming this Court, held that there was sufficient evidence to go to the jury on the issue of willful and wanton conduct. The case arose out of a collision involving a 1967 Pontiac operated by James Miller and a 1968 Corvette owned and operated by one Rudisill. There were two passengers in the Rudisill automobile. Passenger Brewer was killed; passenger Carroll suffered personal injury. The evidence tended to show that the driver Rudisill had a .31% alcohol content in his blood; that after stopping for a traffic light he "kicked it" and approached a curve at "well over a hundred"; that a passenger warned him two or three times to slow down; that the car left its lane of traffic and struck a telephone pole on the left side of the car; and that the final impact was a head-on collision with another vehicle which was travelling in the proper traffic lane.

Again in *Pearce v. Barham, supra,* the Court found there was sufficient evidence of both willful and wanton conduct. The evidence in that case indicated that defendant was "driving in a drizzling rain, with slick tires, upgrade, at a speed of ninety miles an hour 'or better,' moving back and forth across the road," crossed an intersection without stopping, and overturned in a field killing the driver and injuring the passengers.

Allegations that defendant was driving drunk at night and on the wrong side of the street in a business section of Charlotte at a rate of 45 or 50 miles per hour were sufficient to state a cause of action for willful negligence. *Foster v. Hyman, supra.*

However, evidence that defendant and plaintiff were riding motorcycles; that defendant was riding his motorcycle opposite to the customary direction followed on the dirt track; that defendant accelerated to a speed of 45 to 50 miles per hour toward plaintiff; that plaintiff drove his motorcycle off the trail to avoid collision; and that defendant apparently turned directly into plaintiff was insufficient to find willful and wanton negligence. *Jarvis v. Sanders*, 34 N.C. App. 283, 237 S.E. 2d 865 (1977).

In *Johnson v. Yates*, 31 N.C. App. 358, 229 S.E. 2d 309 (1976), this Court found the following to be sufficient evidence to go to the jury on willful and wanton negligence:

"[D]efendant driver, after drinking a quantity of intoxicants sufficient to cause his blood content of alcohol to be .17, operated the pickup truck in which intestate was riding as a passenger over a narrow rural paved road, in the nighttime, at a speed so great that when said driver lost control of the vehicle it slid on the paved portion of the road 260 feet, then slid on the ground adjoining the road 137 feet, and then struck a tree with a 12-inch trunk with such force that the tree was uprooted and mashed into and around the vehicle. . . ." 31 N.C. App. at 363, 229 S.E. 2d at 312.

Finally, the case *sub judice* should be distinguished from *Hughes v. Lundstrum, supra.* It is apparent that the *Hughes* Court reasoned that an instruction on willful and wanton negligence was unnecessary since the plaintiff's conduct, even considering the evidence in the light most favorable to plaintiff, was at least equally as aggravated as that of the defendant.

[3] The evidence in the case at bar tends to show the sequence and occurrence of the following events: The collision occurred during the nighttime in a 35 mile-per-hour zone along Green Street which at the point of impact had a level, smooth, dry surface. Defendant was travelling between 60 and 80 miles per hour in the westbound lane and struck plaintiff's vehicle in the eastbound lane. There was testimony that defendant shortly before the collision, was so drunk that he kept falling against his car. The same witness also testified that because of alcoholic consumption the defendant's speech was noticeably affected and that while talking he had difficulty keeping his eyes open. He was told he was too drunk to drive.

We need not summarize plaintiff's other evidence. The foregoing evidence alone is sufficient to require submission to the jury on the issue of willful and wanton negligence. This is ample evidence from which a jury might conclude that defendant intentionally drove his automobile while voluntarily intoxicated, in excess of the posted speed limit, and on the wrong side of the street thereby willfully breaching duties imposed upon him by law. Furthermore, the jury could infer from the circumstances that defendant conducted himself with reckless indifference to the danger of others created by such conduct.

The trial court erred in directing a verdict for the defendant at the conclusion of plaintiff's evidence. Therefore, the judgment must be

Reversed.

Judges ARNOLD and MARTIN (Harry C.) concur.