SHERRY BOYD, Administratrix d.b.n. of the Estate of PATRICK C. BOYD, JR., Deceased v. L. G. DeWITT TRUCKING COMPANY, INC. and CHARLIE HARTFORD LOCKLEAR

No. 9020SC722

(Filed 16 July 1991)

**1. Damages § 84 (NCI4th) — wrongful death — intoxicated truck driver — punitive damages**

The trial court properly denied defendants' motions for directed verdict and for judgment notwithstanding the verdict on plaintiff's claim for punitive damages arising from defendant Locklear's negligence in driving his truck into the rear of the decedent's vehicle where the evidence was sufficient to meet the plaintiff's burden of proof on the issue of Locklear's intoxication, and plaintiff's evidence tended to show that Locklear was traveling in excess of the posted speed limit with a fully loaded rig and with an unauthorized female passenger, no attempt was made to avoid the accident prior to its occurrence, and Locklear's own testimony reveals that he did not see the decedent's vehicle until an instant before the collision even though the road he was traveling was straight, if somewhat hilly.

**Am Jur 2d, Death § 259.**

**Intoxication of automobile driver as basis for awarding punitive damages. 65 ALR3d 656.**

**2. Damages § 80 (NCI4th) — wrongful death — intoxicated truck driver — willful or wanton entrustment by trucking company — punitive damages**

The trial court properly denied defendants' motions for a directed verdict and for judgment notwithstanding the verdict on plaintiff's claim for punitive damages arising out of defendant truck company's negligent entrustment of the truck to defendant driver where the evidence tended to show that the driver, Locklear, had worked for twenty years for defendant trucking company, or another company with which this defendant had merged; the driver had been hired and rehired eleven times during that period; he was required to fill out an employment application each time; the company did not have any records concerning the driver's hirings prior to 1981;

BOYD v. L. G. DeWITT TRUCKING CO.

[103 N.C. App. 396 (1991)]

the company's personnel and safety director testified that he had consulted with employees of the merged company concerning defendant; the driver had two convictions for driving while under the influence, three convictions for reckless driving, and six speeding convictions in the preceding twenty years; and, while defendants contend that federal regulations only require that an applicant's record be investigated for the last three years and that a record check for those years shows only three violations, it does not necessarily follow that such compliance conclusively demonstrates the exercise of due care. Plaintiff presented sufficient evidence from which a jury could find that Locklear was an unsafe driver and that the company knew or should have known of the danger to the driving public.

**Am Jur 2d, Death § 259.**

**Intoxication of automobile driver as basis for awarding punitive damages. 65 ALR3d 656.**

3. **Automobiles and Other Vehicles § 563 (NCI4th)— wrongful death—intoxicated decedent—willful and wanton contributory negligence—exclusion of evidence harmless**

Any error in excluding evidence of the decedent's intoxication in a wrongful death action was harmless error where defendants failed to show that evidence of decedent's intoxication, standing alone, would have been sufficient even to show actionable negligence, much less willful or wanton negligence.

**Am Jur 2d, Death §§ 198, 203.**

4. **Damages § 178 (NCI4th)— wrongful death—intoxicated truck driver—punitive damages—not excessive**

The trial court did not err by denying defendants' motion for a new trial on punitive damages based on an excessive award where the evidence was sufficient to warrant the amount awarded.

**Am Jur 2d, Damages §§ 1021, 1023; Death § 539.**

**Excessiveness or inadequacy of punitive damages awarded in personal injury or death cases. 35 ALR4th 441.**

APPEAL by defendants from judgment entered 5 April 1990 in RICHMOND County Superior Court by *Judge Julius A. Rousseau, Jr.* Heard in the Court of Appeals 15 January 1991.

*Leath, Bynum, Kitchin & Neal, P.A., by Henry L. Kitchin and Stephan R. Futrell, and Etheridge, Moser, Garner & Bruner, P.A., by Terry R. Garner, for plaintiff-appellee.*

*McLean, Stacy, Henry & McLean, by Horace E. Stacy, Jr., for defendants-appellants.*

WYNN, Judge.

I

This appeal arises out of a wrongful death action in which plaintiff sought both compensatory and punitive damages on behalf of her deceased husband, Patrick Boyd ("decedent"), who was killed in a rear-end collision with a tractor-trailer driven by defendant Charles H. Locklear ("Locklear"), an employee for defendant L.G. DeWitt Trucking Company, Inc. ("DeWitt"). Plaintiff's complaint alleged that Locklear had been wilfully or wantonly negligent in causing the collision and that such negligence could be imputed to DeWitt as Locklear's employer. The complaint also alleged that DeWitt had been independently negligent in entrusting the tractor-trailer to Locklear, and that DeWitt's independent negligence was also wilful or wanton.

In their answer, the defendants denied that they had been negligent to any degree in causing the collision, and further denied that DeWitt had been negligent to any degree in entrusting the tractor-trailer to Locklear. In the alternative, the defendants alleged that the decedent had been contributorily negligent in causing the collision, and that such negligence had been wilful or wanton. Plaintiff's reply alleged that Locklear had had the last clear chance to avoid the accident. Other issues which were raised by the pleadings have been decided and are not involved in this appeal. The evidence in the record tends to show the following facts.

On the evening of 16 July 1985, the decedent and five other passengers (two adults and three small children) were traveling in a westerly direction on U.S. Highway 74 when the truck's engine stalled near the Richmond County/Scotland County line. Since the point at which the pickup truck had stalled was on a slight decline, the decedent, who was driving, allowed the pickup truck to coast and made several unsuccessful attempts to restart it.

BOYD v. L. G. DeWITT TRUCKING CO.

[103 N.C. App. 396 (1991)]

Witness Paul Sweeny, a passenger in decedent's vehicle, testified that while the decedent was trying to restart the engine, both he and another passenger, Clyde Bass, turned to look out of the truck's rear window and noticed an eighteen-wheel tractor-trailer approximately four-tenths of a mile behind them. Upon noticing the tractor-trailer, Sweeny told the decedent of the approaching tractor-trailer. Nonetheless, the decedent continued his attempts at restarting the pickup. A "very short period of time later," Sweeny again looked out of the truck's rear window. This time, the tractor-trailer was approximately 658 feet from the pickup truck. As the pickup continued to coast "real slow," Sweeny jumped out of the pickup truck and fell onto the shoulder of the highway. Bass followed Sweeny out of the truck, carrying his daughter. Moments later, the tractor-trailer smashed into the back of decedent's truck, killing the decedent and one of the child passengers. Another child passenger was severely injured in the collision.

Sweeny further testified that the tractor-trailer did not swerve prior to the collision and that he did not see the tractor-trailer's brake lights illuminate prior to impact.

Timothy Galligan, a service station attendant in Laurinburg, North Carolina, testified that on the night of the accident, but prior to the accident, he had seen Locklear drinking a beer and that Locklear had slapped him during an ensuing argument. He further testified that in his opinion, Locklear should not have been driving that night, due to his intoxication.

Following the argument with Galligan, Locklear got into his tractor-trailer and headed toward U.S. Highway 74. Locklear testified that he was carrying a shipment of over forty-two thousand pounds of wine coolers to Akron, Ohio. The evidence also showed that an unauthorized female companion was riding with Locklear at the time of the accident.

Witness Lawrence Lee, who was driving a tractor-trailer unit for another company, testified that he was traveling behind Locklear prior to the accident. He estimated that Locklear's speed at the time of the collision was approximately 60 or 61 m.p.h.

During trial, the parties entered into a "high-low" settlement agreement with respect to compensatory damages. The parties stipulated that regardless of the jury's answers to the issues pertaining to the defendants' liability for ordinary negligence, the plain-

**BOYD v. L. G. DeWITT TRUCKING CO.**

[103 N.C. App. 396 (1991)]

tiff would recover no less than $100,000, nor more than $250,000 in compensatory damages from the defendants. The agreement did not, however, limit plaintiff's recovery, if any, for punitive damages.

Nine issues were submitted for the jury's consideration. Those issues and the jury's answers to them were as follows:

1. Did Patrick Boyd die as a result of the negligence of the Defendants?

Answer: Yes

2. If so, did Patrick Boyd, by his own negligence, contribute to his death?

Answer: Yes

3. Did the Defendant Charles Locklear, have the last clear chance to avoid the collision and death of Patrick Boyd?

Answer: Yes

4. Was Pat Boyd killed by the willful or wanton conduct of Charles Locklear?

Answer: Yes

5. What amount of compensatory damages is the Plaintiff entitled to receive as a result of the death of Patrick Boyd?

Answer: $869,200.00

6. What amount of punitive damages, if any, is the Plaintiff entitled to recover for the wilful or wanton negligence of the Defendants?

Answer: $500,000.00

7. Did DeWitt Trucking Company negligently entrust its tractor and trailer to Charles Locklear?

Answer: Yes

8. If so, was the negligence of DeWitt Trucking Company willful or wanton?

Answer: Yes

9. What amount of punitive damages, if any, is the Plaintiff entitled to recover for the willful or wanton negligence of DeWitt Trucking Company?

Answer: $3,500,000.00

The parties agree that the "high-low" agreement has foreclosed the liability issues with respect to compensatory damages. Therefore, the issues raised in this appeal relate solely to punitive damages.

## II

Defendants first assign as error the trial court's denial of their motions for a directed verdict on the plaintiff's claims for punitive damages arising out of the alleged negligence of defendant Locklear and the alleged negligent entrustment of defendant DeWitt Trucking Company. Defendants also assign error to the trial court's denial of their motion for judgment notwithstanding the verdict. The defendants specifically contend that the evidence at trial was insufficient as a matter of law to support the jury's finding that both Locklear's and DeWitt's negligence was wilful or wanton.

The purpose of a motion for directed verdict is to test the legal sufficiency of the evidence to take the case to the jury and to support a verdict for the plaintiff. *Wallace v. Evans*, 60 N.C. App. 145, 146, 298 S.E.2d 193, 194 (1982). In passing upon a motion for directed verdict, the court must consider the evidence in the light most favorable to the nonmoving party; it must then grant the motion if, as a matter of law, the evidence is insufficient to justify a verdict for the nonmovant. *Kelly v. International Harvester Co.*, 278 N.C. 153, 158, 179 S.E.2d 396, 398 (1971). The same factors are considered in determining whether a judgment notwithstanding the verdict should be granted. *Colony Assoc. v. Fred L. Clapp & Co.*, 60 N.C. App. 634, 637, 300 S.E.2d 37, 39 (1983) (citing *North Carolina Nat'l Bank v. Burnette*, 297 N.C. 524, 256 S.E.2d 388 (1979) ).

## A

### Locklear's Negligence

[1] Our General Statutes authorize the recovery of punitive damages in a wrongful death action. N.C. Gen. Stat. § 28A-18-2(b)(5) (1984 & Cum. Supp. 1990). In the case of accidental injuries, punitive damages can be awarded only where the defendant's misconduct reaches a higher level than mere negligence. *Holley v. Hercules*,

*Inc.*, 86 N.C. App. 624, 627, 359 S.E.2d 47, 49 (1987). Such misconduct must amount to wantonness, wilfulness, or a reckless indifference to consequences. *Id.* "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." *Siders v. Gibbs*, 39 N.C. App. 183, 187, 249 S.E.2d 858, 861 (1978). "An act is wilful when there exists 'a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another,' a duty assumed by contract or imposed by law." *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 383-84, 291 S.E.2d 897, 903 (quoting *Brewer v. Harris*, 279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971), *aff'd* 307 N.C. 267, 297 S.E.2d 397 (1982) ). Thus, in a wrongful death action arising out of negligence, a directed verdict may properly be granted against a plaintiff seeking punitive damages only where the evidence is insufficient as a matter of law to support a jury finding that the defendant wrongfully caused the death of the decedent in a malicious, wilful, wanton or grossly negligent manner.

The plaintiff's evidence tended to show that Locklear was intoxicated at the time of the accident, that he was traveling in excess of the posted speed limit, with a fully-loaded rig and with an unauthorized female passenger, and that no attempt was made to avoid the accident prior to its occurrence. In addition, even though Locklear was traveling on a straight, if somewhat hilly road, his own testimony reveals that he did not see the decedent's vehicle until an instant before the collision.

This evidence was sufficient to support a jury finding that Locklear's conduct "manifested a reckless indifference to the rights of others." The defendants argue, however, that the plaintiff failed to meet her "extremely strict burden of proof" on the issue of Locklear's intoxication. *Ivey v. Rose*, 94 N.C. App. 773, 776, 381 S.E.2d 476, 478 (1989) (quoting *Huff v. Chrismon*, 68 N.C. App. 525, 315 S.E.2d 711, *disc. review denied*, 311 N.C. 756, 321 S.E.2d 134 (1984) ). We disagree.

Three separate witnesses testified that they detected an odor of alcohol on the defendant's person: (1) Paul Sweeny, an eyewitness, testified that while standing beside Locklear following the accident, he smelled alcohol on Locklear's person; (2) an emergency medical technician testified that he smelled an odor of alcohol on Locklear while assisting him into an ambulance; and (3) a nurse who happened upon the scene of the accident also smelled alcohol on

**BOYD v. L. G. DeWITT TRUCKING CO.**

[103 N.C. App. 396 (1991)]

Locklear's person. She also testified that Locklear looked like "he might be going to fall down any minute." We believe that this evidence, when coupled with Timothy Galligan's testimony that when he saw Locklear *less than one hour* before the accident, Locklear was drinking a beer and was intoxicated to the point where he should not have been driving, was sufficient to meet the plaintiff's burden on the issue of defendant Locklear's intoxication.

Viewing the evidence in the light most favorable to the plaintiff, we conclude that the plaintiff presented sufficient evidence from which a jury could find that the defendant Locklear's negligence was wilful or wanton. Accordingly, the trial court properly denied the defendants' motions for directed verdict and for judgment notwithstanding the verdict on the plaintiff's claim for punitive damages arising out of Locklear's negligence.

### B

### DeWitt's Negligence

[2] The plaintiff's complaint alleged and the jury concluded that DeWitt Trucking Company negligently entrusted its tractor-trailer to Locklear and that such negligence was wilful or wanton. The defendants contend, however, that the evidence was insufficient to support either of the jury's findings and that, therefore, no basis existed for the jury's award of punitive damages for wilful or wanton negligent entrustment.

Under the doctrine of negligent entrustment,

the owner of [a] motor vehicle who entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver, thereby becomes *liable* for such person's negligence in the operation thereof; and in such case the *liability* of the owner is predicated upon his own negligence in entrusting the operation of the motor vehicle to such a person.

*Heath v. Kirkman*, 240 N.C. 303, 307, 82 S.E.2d 104, 107 (1954).

The evidence tended to show that Locklear had worked for DeWitt "off and on" for twenty years, from 1965-1985. During that time he was hired and rehired eleven times. Each time that Locklear was rehired, he was required to fill out an employment application. Art McKenzie, DeWitt's personnel and safety director, testified that DeWitt did not have any records concerning Locklear's hirings

for the years preceding 1981. He explained that this may have been due to the fact that DeWitt had merged with another company for which Locklear had worked prior to 1981: Textile Motor Freight. McKenzie further testified that he had nonetheless consulted with Textile Motor Freight employees about hiring Locklear.

During the twenty years that Locklear worked for Textile Motor Freight and DeWitt, DMV record checks reveal that Locklear had two convictions for driving under the influence of alcohol, three convictions for reckless driving, and six speeding convictions. The defendants contend, however, that the Federal Motor Carrier Safety Regulations require only that the hiring company investigate an applicant's driving record for the preceding three years. Since Locklear was rehired in 1985, DeWitt argues, it should only be held accountable for the information concerning Locklear's driving record between the years 1982-1985. A record check for those years, according to DeWitt, shows only three violations: (1) failure to stop for a siren and reckless driving; (2) speeding; and (3) driving while intoxicated and failure to stop for a siren.

Assuming, without deciding, that DeWitt did in fact comply with the regulations, it does not necessarily follow that such compliance conclusively demonstrates the exercise of due care. *See, e.g., Thomas v. Dixon*, 88 N.C. App. 337, 343, 363 S.E.2d 209, 213 (1988) (whether or not a building meets building code standards is not determinative of negligence); *Paysour v. Pierce*, 76 N.C. App. 364, 367, 333 S.E.2d 314, 317 (1985), *disc. review denied*, 315 N.C. 589, 341 S.E.2d 28 (1986) (issuance of a building permit is not necessarily evidence of the safety of a building); *See also* Restatement (Second) of Torts § 288C (1965) ("Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions"); W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 36, at 233 (5th ed. 1984).

After reviewing the evidence, we find that the plaintiff presented sufficient evidence from which a jury could find that Locklear was an unsafe driver and that DeWitt either knew or should have known of Locklear's danger to the rest of the driving public. We further find that given the number and severity of the offenses for which Locklear was convicted, the evidence was equally sufficient to support the jury's finding that DeWitt's negligent entrustment was wilful or wanton. Thus, the trial court properly denied

**BOYD v. L. G. DeWITT TRUCKING CO.**

[103 N.C. App. 396 (1991)]

the defendants' motions for a directed verdict and for judgment notwithstanding the verdict on plaintiff's claim for punitive damages arising out of defendant DeWitt Trucking Company's negligent entrustment.

## III

[3] The defendants next contend that the trial judge erred in excluding certain testimony of Trooper Pat Glass and the results of a blood alcohol test, both of which tended to show that the decedent had been drinking at the time of the accident. Trooper Glass, who was at the scene of the accident, testified on *voir dire* that he smelled the odor of alcohol on the decedent's person. In addition, the results of a blood alcohol test performed by the State Medical Examiner two hours after the accident revealed that the decedent had a blood alcohol content of .02.

The defendants argue that such evidence would have provided a basis for the jury to find that the decedent had been wilfully or wantonly contributorily negligent, and that such a finding would have been a defense to the defendant's wilful and wanton negligence, thereby precluding the recovery of punitive damages. They also argue that the admission of such evidence would have supported a jury instruction, which the trial judge refused to make, on the defense of wilful or wanton contributory negligence.

Assuming it was error to exclude this evidence, such error was harmless. A party asserting error must show not only that error has been committed, but also that a different result would have ensued had the error not occurred. *Warren v. City of Asheville*, 74 N.C. App. 402, 409, 328 S.E.2d 859, 864, *disc. review denied*, 314 N.C. 336, 333 S.E.2d 496 (1985). The defendants have failed to show that the evidence of decedent's intoxication, standing alone, would have been sufficient even to show actionable negligence, *Rhyne v. O'Brien*, 54 N.C. App. 621, 625, 284 S.E.2d 122, 124 (1981), much less wilful or wanton negligence. As stated by this court in *Rhyne*:

> A mere finding by the jury that a motorist involved in a collision was under the influence of an intoxicant at the time does not establish a causal relation between his condition and the collision. His condition must have caused him to violate a rule of the road and to operate his vehicle in a manner which was a proximate cause of the collision.

54 N.C. App. at 625, 284 S.E.2d at 125.

In the absence of additional evidence, we must conclude that even if the evidence of decedent's intoxication had been admitted, it would have been insufficient as a matter of law to submit the issue of wilful or wanton contributory negligence to the jury. Defendants' assignment of error is therefore overruled.

Since we have determined that the evidence would have been insufficient to support a finding of wilful or wanton contributory negligence had the evidence of decedent's intoxication been admitted, there was no need for the trial judge to instruct the jury on the issue of wilful or wanton contributory negligence; therefore, defendants' assignment of error on this point is also overruled.

IV

[4] In their final assignment of error, defendants contend that the trial court erred in denying their motion for a new trial on the issue of punitive damages. They assert that the jury's punitive damages awards were excessive.

"[A] trial judge's *discretionary* order pursuant to G.S. 1A-1, Rule 59 for or against a new trial upon *any* ground may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown." *Worthington v. Bynum*, 305 N.C 478, 484, 290 S.E.2d 599, 603 (1982). A discretionary ruling by the trial judge should not be disturbed on appeal unless the appellate court is convinced by the cold record that the ruling probably amounted to a substantial miscarriage of justice. *Id.* at 487, 290 S.E.2d at 605.

After carefully reviewing the record, we are of the opinion that the evidence in the case *sub judice* was sufficient to warrant the amount of punitive damages awarded. Thus, the trial judge's denial of the defendants' motion did not amount to a substantial miscarriage of justice. We therefore find no error in the trial judge's ruling.

No error.

Judges PHILLIPS and EAGLES concur.