RONALD GRAY BERRIER, Administrator of the Estate of CHRISTY PAIGE BERRIER, Plaintiff v. GARY WAYNE THRIFT, II, Defendant

No. 9122SC253

(Filed 1 September 1992)

1. **Appeal and Error § 114 (NCI4th) — motion to dismiss — failure to state claim — denial not appealable after judgment on merits**

    An unsuccessful movant for a dismissal under Rule 12(b)(6) for failure to state a claim may not seek review of the denial of such motion on appeal from judgment on the merits against him.

    **Am Jur 2d, Appeal and Error § 105.**

    **Appellate review at instance of plaintiff who has requested, induced, or consented to dismissal or nonsuit. 23 ALR2d 664.**

2. **Automobiles and Other Vehicles § 563 (NCI4th); Damages § 131 (NCI4th) — intoxicated driver — willful and wanton negligence — punitive damages**

    The evidence in a wrongful death action was sufficient to support the jury's verdict finding willful and wanton negligence by defendant and awarding punitive damages to plaintiff where it tended to show that defendant insisted on driving decedent's car and decedent was a passenger in her car at the time of the accident; decedent was killed when the car failed to negotiate a curve; defendant had consumed ten cans of beer within the two to three hours prior to driving decedent's car but failed to tell any of the passengers about his excessive consumption of alcohol; defendant's blood alcohol level was 0.184 two hours after the accident; and defendant was aware that alcohol impairs a driver's reaction time and that his driving a car after drinking posed a risk.

    **Am Jur 2d, Damages §§ 750, 764; Death § 259.**

    **Intoxication of automobile driver as basis for awarding punitive damages. 65 ALR3d 656.**

3. **Appeal and Error § 343 (NCI4th) — failure to instruct — waiver of objection**

    Defendant waived his objection to the trial court's failure to instruct the jury on gross contributory negligence where

BERRIER v. THRIFT

[107 N.C. App. 356 (1992)]

he made no request that the court give such an instruction at either of the two charge conferences or when given the opportunity to object to the jury instructions before the jury retired to consider its verdict. Furthermore, the evidence did not require an instruction on gross contributory negligence. Appellate Rule 10(b)(2).

**Am Jur 2d, Trial §§ 1081, 1087.**

4. **Trial § 46 (NCI3d)— punitive damages—impeachment of jury verdict—juror affidavits inadmissible**

The trial court properly refused to permit defendant to impeach a verdict awarding punitive damages in a wrongful death action by the affidavits of three jurors that the jury foreman misinformed the jurors during deliberations that punitive damages were only a "statement" of what decedent's life was worth rather than a collectible money judgment and that the jury would not have awarded punitive damages if the jurors had known punitive damages had anything more than symbolic value since the contents of the affidavits do not fall within the exception set forth in N.C.G.S. § 8C-1, Rule 606(b) for extraneous prejudicial information.

**Am Jur 2d, Trial § 1902.**

**Competency of jurors' statements or affidavits to show that they never agreed to purported verdict. 40 ALR2d 1119.**

APPEAL by defendant from judgment entered 7 June 1990 and order entered 30 August 1990 by *Judge F. Fetzer Mills* in DAVIDSON County Superior Court. Heard in the Court of Appeals 5 December 1991.

*Womble Carlyle Sandridge & Rice, by Allan R. Gitter and Ellen M. Gregg, for plaintiff-appellee.*

*Brinkley, Walser, McGirt, Miller, Smith & Coles, by Charles H. McGirt and Stephen W. Coles, for defendant-appellant.*

PARKER, Judge.

This wrongful death action arising out of a single car collision was brought pursuant to N.C.G.S. § 28A-18-2 by the administrator of decedent Christy Paige Berrier's estate. The jury found that defendant was negligent, decedent was contributorily negligent but

defendant was grossly negligent. The estate was awarded $50,000.00 in compensatory damages and $250,000.00 in punitive damages. Defendant appeals the punitive damage award on three grounds: (i) trial and submission to the jury of the issue of wilful, wanton or gross negligence, making it error as well for the trial court to have submitted the issue of punitive damages to the jury; (ii) failure of the trial court, in the alternative, to submit the issue of gross contributory negligence to the jury, in that decedent was allegedly negligent to the same degree as defendant; and (iii) abuse of discretion in the judge's denial of defendant's motion for new trial based on juror affidavits about what occurred in the jury room during deliberations. Finding no error, we affirm the judgment of the trial court.

At trial the evidence showed that the Volkswagen Super Beetle involved in the accident was owned by decedent's father, but was being driven by defendant at the time of the collision. Defendant was negotiating a curve on a country road at night when he lost control of the car which ran off the road and rolled down a steep embankment. Decedent was thrown from the front passenger seat of the car and died at the scene. Defendant and the three passengers in the rear seat of the vehicle survived without permanent physical injury. Tests showed that defendant's blood alcohol level two hours after the accident was 0.184. Decedent's blood alcohol level was 0.04.

Among plaintiff's six witnesses were two of the rear-seat passengers. The witnesses for the defense were defendant, the third surviving passenger and a State trooper who had investigated the accident scene. All the passengers testified that they noticed nothing unusual about defendant or his driving up to the time of the accident.

Defendant testified he volunteered to drive decedent's car because she did not ordinarily drink and he "didn't want her to get in any trouble" for violating her parents' rules against drinking. Decedent had had no more than one or two glasses of wine and seemed her normal self, according to the testimony of other witnesses. Decedent's initial response to defendant's offer to drive was to remind him she was not supposed to let anyone else drive her car. The evidence was in conflict, however, over whether defendant continued to pressure decedent to let him drive or whether, instead, she failed to make any further protest after informing

him she did not want him to drive. Unknown to decedent and the other passengers, defendant had had eight cans of beer within two hours of dropping in on decedent and her friends at a cookout and had also had "some" alcohol while hunting earlier that day. Those at the supper only saw defendant finish a beer he brought with him and then drink a second.

Defendant also testified that he volunteered to drive because "I was basically used to drinking. Most weekends I drink a lot and I didn't feel like [decedent] was used to drinking much." Defendant testified that he knew he had been drinking and felt the effects of the alcohol but still did not feel he should not drive. He conceded, though, that he lost control of decedent's car and that alcohol impairment contributed to the accident in that his "reactions were probably slow, slower than usual."

Defendant testified he had pled guilty to driving while impaired, pursuant to N.C.G.S. § 20-138.1, and also pled guilty to misdemeanor death by motor vehicle, pursuant to N.C.G.S. § 20-141.4(a2). During cross-examination defendant further admitted knowledge that alcohol impairs anyone's ability to drive, that driving while impaired is a crime, that he had alcohol in his system when he drove decedent's car and that there was a risk associated with his driving a car the night of the fatal accident.

The State trooper testified he could tell that defendant was somewhat impaired, having observed at the hospital "a definite odor of alcohol as [defendant] spoke," "very blood shot" eyes and slow, labored speech. The trooper had been surprised at defendant's high alcohol blood level of 0.184, however, as defendant had not seemed "that drunk" at the scene. At trial the trooper gave his opinion that, in general, a blood alcohol level of 0.10 or above noticeably affects people.

[1] Defendant first assigns error to the trial court's denial of his motions to dismiss plaintiff's claim for gross, wilful and wanton negligence under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and to strike the prayer for punitive damages. These motions were denied at the pretrial conference. An unsuccessful movant under Rule 12(b)(6) may not seek review of denial of such motion on appeal from judgment on the merits against him. *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 682-83, 340 S.E.2d 755, 758-59, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986). Therefore, we overrule this assignment of error.

Defendant assigns error as well to the trial court's denial of his motions for directed verdict and judgment notwithstanding the verdict on the issues of gross negligence and punitive damages. Defendant argues that the trial evidence did not support a finding of gross negligence and hence the punitive damage award had no foundation as a matter of law.

The trial court instructed the jury on punitive damages as follows.

> [T]he burden of proof is on the Plaintiff Ronald Gray Berrier. This means that the Plaintiff must prove by the greater weight of the evidence that the conduct of [Defendant] was aggravated, that is, that his negligence, if any, was gross, willful or wanton. I charge you that punitive damages may never be awarded as a matter of right. They may only be awarded when the jury finds that the conduct of the Defendant is so outrageous as to justify punishing him or making an example of him. In a case of alleged negligence, punitive damages may be awarded upon the showing that the negligence was gross, willful or wanton. Negligence is gross, willful or wanton when the wrongdoer acts with a conscious and intentional disregard of and indifference to the rights and safety of others. Upon a showing of gross, willful or wanton negligence, whether to award punitive damages, and within reasonable limits, the amount to be awarded are matters within the sound discretion of the jury.

This instruction properly presents the law of this State. *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E.2d 393, 397, 62 A.L.R.2d 806, 811 (1956) (gross negligence is "conscious and intentional disregard of and indifference to the rights and safety of others").

In *Huff v. Chrismon*, 68 N.C. App. 525, 531, 315 S.E.2d 711, 714, *disc. rev. denied*, 311 N.C. 756, 321 S.E.2d 134 (1984), this Court ruled that the doctrine of punitive damages against impaired drivers applies "in certain situations without regard to the drivers' motives or intent." *Accord Ivey v. Rose*, 94 N.C. App. 773, 776, 381 S.E.2d 476, 478 (1989) ("act of driving while impaired is a *wanton* act"). *Huff* derived its rationale from *Focht v. Rabada*, 217 Pa. Super. 35, 268 A.2d 157 (1970), in which the court held impaired driving could be "outrageous conduct" or "a reckless indifference to the interests of others" in appropriate circumstances. *Huff*, 68 N.C. App. at 532, 315 S.E.2d at 715.

[2] In considering defendant's motions for directed verdict and judgment notwithstanding the verdict on these issues, the trial court was required to

> view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E.2d 333, 337-38 (1985). Applying the law to the facts in the present case, we find the evidence of gross negligence in this case was sufficient to go to the jury. "If the facts are such that reasonable men could differ upon whether the negligence amounted to willful and wanton conduct, the question is generally preserved for the jury to resolve." *Siders v. Gibbs*, 39 N.C. App. 183, 186, 249 S.E.2d 858, 860 (1978). *See also Boyd v. L.G. DeWitt Trucking Co.*, 103 N.C. App. 396, 401-403, 405 S.E.2d 914, 918-19, *disc. rev. denied*, 330 N.C. 193, 412 S.E.2d 53 (1991).

On its facts this case is distinguishable from *Brake v. Harper*, 8 N.C. App. 327, 174 S.E.2d 74, *cert. denied*, 276 N.C. 727 (1970), in which an investigating officer's opinion about the driver's intoxication was supported in the record by nothing more than the officer's memory that the breathalyzer reading was below 0.10. Similarly, in *Howard v. Parker*, 95 N.C. App. 361, 382 S.E.2d 808 (1989), the allegations of intoxication without more would have been the sole basis for the jury's punitive damage award. In the present case defendant, by his own admissions at trial, had started drinking early on the day of the accident and consumed ten cans of beer within the two or three hours just prior to driving decedent's car. Two hours after the accident defendant's blood alcohol level was 0.184. A breathalyzer reading of 0.10 constitutes legal impairment in North Carolina. N.C.G.S. § 20-138.1(a)(2).

Moreover, defendant was aware that alcohol impairs a driver's reaction time and that his driving a car that night posed a risk. In this case, then, the chemical evidence and the personal observations by the State trooper were amplified by evidence of defendant's awareness of the consequences of driving while impaired, of his deliberate decision in the face of such knowledge to com-

mandeer control of decedent's car — without telling any of the four passengers about his excessive consumption of alcohol — and of his actual inability to keep the car under control. That evidence was sufficient for the jury to infer a reckless disregard for the rights and safety of others. For these reasons we overrule the assignments of error based on the sufficiency of the evidence of gross negligence.

[3]   Next defendant contends that the trial court erred in failing to instruct the jury on gross contributory negligence. We note that defendant pled gross contributory negligence as a defense in his answer but made no request that the court give such an instruction, at either of the two charge conferences or when given the opportunity to object to the jury instructions before the jury retired to consider its verdict. Under these circumstances, defendant has waived this objection under North Carolina Rule of Appellate Procedure 10(b)(2). We also find that the evidence in this case raised no issue of decedent's gross contributory negligence and, therefore, the evidence triggered no obligation in the trial judge to instruct the jury on this issue as a substantive feature of the case. See *Millis Construction Co. v. Fairfield Sapphire Valley*, 86 N.C. App. 506, 509, 358 S.E.2d 566, 568 (1987). Accordingly, we overrule the assignment of error based on an omission from the jury instructions.

[4]   Finally, defendant argues that he deserves a new trial on the ground that the jury's punitive damage award was a mistake. According to three juror affidavits submitted to the trial judge along with an affidavit of the assistant clerk of court, the foreman misled the jury during deliberations by misinforming the jurors that punitive damages were a "statement" of what decedent's life was worth rather than a collectible money judgment. The affiants averred that had the jury known punitive damages had anything more than symbolic value, the jury would not have awarded any punitive damages. Based on these juror statements, defendant argues the trial court had knowledge of an irregularity during deliberations and jury misconduct, which went uncorrected. As explained below, the trial court is prohibited from considering such statements and this assignment of error is without merit.

In the present case the jury had been discharged and was filling out information for the clerk when one juror asked the clerk if the jury's $250,000.00 award was collectible. She replied that it was indeed a money judgment; the jurors grew upset and told

her the foreman had said otherwise. Almost immediately thereafter, defendant raised the issue of possible juror confusion by making a motion to reconvene the jury. The judge and defense counsel had the following colloquy.

MR. MCGIRT: You were aware immediately after the jury was discharged they were in your office and brought to your attention they did not understand what the last issue was, that it was not a monetary issue that they had been given information in there that all of that was just telling the family what the value of the human life was, it was for a judgment that was not collectable, if it had been, they would not have signed it or agreed to it. These jurors went to your office and brought this to your attention.

THE COURT: No, no, no. I walked in there to get my coat to go eat lunch. The jury was in there talking amongst themselves. They were talking to the clerk. They wanted to know the effect of the fifth issue [punitive damages].

MR. MCGIRT: Right.

THE COURT: I said it was collectable. Nobody came and reported anything to me. I walked into my chambers where unbeknownst to me they were in there. . . . And nobody came to me and reported anything to me. I want to get that straight.

The judge then refused to inquire into the jury's verdict, telling defense counsel that jurors could not impeach their own verdict and he would not listen to them "tell what went on in the jury room." The trial court reiterated this position at the later hearing on defendant's motion for new trial: "I just want to get it clear that I don't believe it is proper for me to consider these affidavits about what the jurors say went on in the jury room."

We find no error in the trial court's interpretation of N.C.G.S. § 8C-1, Rule 606(b), which states:

(b) *Inquiry into validity of verdict or indictment.*—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict . . . or concerning his mental processes in connection therewith, except that a

juror may testify on the question whether extraneous preju-
dicial information was improperly brought to the jury's atten-
tion or whether any outside influence was improperly brought
to bear upon any juror. Nor may his affidavit or evidence
of any statement by him concerning a matter about which
he would be precluded from testifying be received for these
purposes.

N.C.G.S. § 8C-1, Rule 606(b) (1988). The Commentary to Rule 606
explains:

> The mental operations and emotional reactions of jurors
> in arriving at a given result would, if allowed as a subject
> of inquiry, place every verdict at the mercy of jurors and
> invite tampering and harassment. *** The authorities are in
> virtually complete accord in excluding the evidence. *** As
> to matters other than mental operations and emotional reac-
> tions of jurors, substantial authority refuses to allow a juror
> to disclose irregularities which occur in the jury room, but
> allows his testimony as to irregularities occurring outside and
> allows outsiders to testify as to occurrences both inside and
> out. . . . [T]he central focus has been upon insulation in the
> manner in which the jury reached its verdict, and this protec-
> tion extends to each of the components of deliberation, in-
> cluding arguments, statements, discussions, mental and
> emotional reactions, votes, and any other feature of the proc-
> ess. Thus testimony or affidavits of jurors have been held
> incompetent to show . . . misinterpretation of instructions,
> *Farmers Coop. Elev. Ass'n v. Strand*, [382 F.2d 224, 230 (8th
> Cir.), *cert. denied*, 389 U.S. 1014, 19 L.Ed.2d 659 (1967)]; mistake
> in returning verdict, *United States v. Chereton*, 309 F.2d 197
> (6th Cir. 1962). . . .

> The exclusion is intended to encompass testimony about
> mental processes and testimony about any matter or statement
> occurring during the deliberations, except that testimony of
> either of these two types can be admitted if it relates to
> extraneous prejudicial information or improper outside influence.

N.C.G.S. § 8C-1, Rule 606 Commentary (1988).

Under our cases construing Rule 606(b), the contents of the
affidavits in this case do not fall within the exception for extraneous
prejudicial information. The Supreme Court has observed:

[E]xtraneous information [means] information dealing with the defendant or the case which is being tried, which information reaches a juror without being introduced into evidence. It does not include information which a juror has gained in his experience which does not deal with the defendant or the case being tried. The other matters contained in the affidavits, that votes were changed because of the foreman's statements, that the foreman would not let a juror send a note to the judge, and that some of the jurors did not think the defendant was guilty dealt with deliberations in the jury room. A juror may not impeach a verdict by testifying to [such matters].

*State v. Rosier*, 322 N.C. 826, 832-33, 370 S.E.2d 359, 363 (1988). In a subsequent case, *State v. Quesinberry*, 325 N.C. 125, 133-35, 381 S.E.2d 681, 687 (1989), *cert. granted and judgment vacated in light of McKoy*, 494 U.S. 1022, 108 L.Ed.2d 603 (1990), *death sentence vacated and remanded for new sentencing*, 328 N.C. 288, 401 S.E.2d 632 (1991), the Court reviewed federal cases distinguishing between "external" influences on jurors, evidence of which may be used to attack a verdict, and "internal" influences on a verdict, which do not fall within the exceptions to Rule 606(b). In *Quesinberry* the Court held that juror consideration during deliberations of the possibility of defendant's parole was an "internal" influence. The Court noted that information about parole eligibility was "general information" rather than information dealing with "this particular defendant" and that the jurors' information did not come from any outside source but was, rather, an "idea," "belief" or "impression." *Id.* at 135, 381 S.E.2d at 688. "Allowing jurors to impeach their verdict by revealing their 'ideas' and 'beliefs' influencing their verdict is not supported by case law, nor is it sound public policy." *Id.* at 136, 381 S.E.2d at 688.

*Rosier* and *Quesinberry* thus reflect the deeply entrenched rule that intrajury influences on a verdict, also known as matters that inhere in the verdict, cannot be inquired into. *Accord McClain v. Otis Elevator Co.*, 106 N.C. App. 45, 415 S.E.2d 78 (1992); *see also Virgin Islands v. Gereau*, 523 F.2d 140, 149-50 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 47 L.Ed.2d 323 (1976); *Kendall v. Whataburger, Inc.*, 759 S.W.2d 751 (Tex. App. 1988) (jurors incompetent to testify about a matter occurring within the jury room even though one juror, a paralegal, had influenced the voting of other jurors). Matters inhering in a verdict "include 'a juror not assenting to the verdict, a juror misunderstanding the instructions of the

court, a juror being unduly influenced by the statements of his fellow-jurors, or a juror being mistaken in his calculations or judgments.' " L. Hardwick & B. Ware, *Juror Misconduct, Law and Litigation* § 6.04, at 6-109 (1990) (quoting *Parker v. State*, 336 So. 2d 426, 427 (Fla. Dist. Ct. App.), *appeal dismissed and cert. denied*, 341 So. 2d 292 (Fla. 1976) ).

As the information allegedly received by the jurors in the present case did not concern either the defendant or the case being tried, but was rather information about the foreman's belief or impression about the impact of punitive damage awards, the trial court correctly refused to consider the juror affidavits under Rule 606(b). Therefore, we overrule this final assignment of error.

Affirmed.

Judges GREENE and WYNN concur.