LAURA ROBINSON, PLAINTIFF v. LINDA TRANTHAM, ADMINISTRATRIX OF THE ESTATE OF HORACE GREGORY HOWARD, JR., DEFENDANT

No. COA08-979

(Filed 17 March 2009)

**1. Negligence— contributory—riding with intoxicated driver**

The trial court did not abuse its discretion by refusing to submit the issue of contributory negligence to the jury in a case involving a one car automobile accident where the evidence was insufficient to support the inference that plaintiff knew or should

have known that defendant (the driver, with plaintiff as a passenger) was under the influence of an impairing substance.

### 2. Negligence— automobile accident—drugs found on passenger—correctly excluded

The trial court did not abuse its discretion in a one car accident case in which plaintiff was a passenger by excluding as unduly prejudicial a plastic baggie containing an undetermined white powder found on plaintiff's person after the accident. There was no evidence presented to the jury that the driver had consumed or was under the influence of an illegal drug on this occasion.

### 3. Trials— motion for new trial—underlying basis rejected on appeal

The trial court did abuse its discretion by denying defendant's motion for a new trial under N.C.G.S. § 1A-1, Rule 59, where that motion was based on the failure to submit contributory negligence to the jury and the exclusion of certain evidence, and those rulings were upheld elsewhere in the opinion.

### 4. Civil Procedure— Rule 60—newly discovered evidence—discoverable earlier with due diligence

The trial did not err by denying a Rule 60 motion for relief based on newly discovered evidence in a case involving a one car automobile accident where the estate of the deceased driver released a sample of the driver's blood to a private lab for testing. The private lab's findings could have been discovered with the exercise of due diligence in time to present them in the original trial.

### 5. Negligence— gross—automobile accident—not submitted to jury—no error

The trial court did not err by failing to submit gross negligence to the jury in a case involving a one car accident where the evidence was that the driver was driving normally, then began to brag about his car and accelerated, and plaintiff, who was a passenger in the car, saw that they were approaching a curve and knew that they were traveling "way above the posted speed limit."

Appeal by defendant from judgment entered 9 October 2007 and orders entered 14 January 2008 by Judge Mark E. Powell in Henderson County Superior Court. Plaintiff cross-appeals from

judgment entered 9 October 2007 by Judge Mark E. Powell in Henderson County Superior Court. Heard in the Court of Appeals 26 January 2009.

*Law Office of Frank B. Jackson, by Frank B. Jackson and Adrienne I. Roberson, for plaintiff-appellee.*

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Dale A. Curriden and Jeffrey D. Zentner, for defendant-appellant.*

BRYANT, Judge.

Defendant appeals and plaintiff cross-appeals from judgment entered 9 October 2007 concluding that plaintiff was injured by the negligence of Horace Gregory Howard, Jr. (Greg) and awarding plaintiff $275,000. Defendant also appeals from the trial court's orders entered 14 January 2008 denying defendant's motion for a new trial based on Rule 59 and defendant's motion for relief from judgment based on Rule 60(b)(2). For the reasons stated herein, we affirm.

On 25 February 2006, Laura Robinson, her teenage son Quinton, Greg, and Greg's eight year old son Horace met around 7:00 p.m. to celebrate a friend's birthday, Jeretta Godfrey. After eating at a local restaurant, the group moved to Ms. Godfrey's house. A bit later, Greg left the house with an adult male who was also at the birthday party and did not return for over an hour. During this time, Laura, Quinton, and Horace remained at the Godfrey home.

After Greg returned, Greg, Horace, Laura, and Quinton traveled to Vernon Appley's house. When they arrived, Appley was having a beer. Appley joined the group and brought with him a twelve-pack of beer. About 12:40 a.m., the group ended up at a vacation cabin in Green River in Henderson County. According to Quinton, Greg drove normally—no speeding, no running off the road, or anything of that matter.

At the cabin, Quinton, Appley, and Greg played darts; Horace went to bed; and Laura made a place for Appley to sleep as well as prepared for their next day departure. During the dart game, only Appley was drinking. After the game, Greg and Appley wanted to look for wildlife and check on a camper Appley had on the premises. Quinton was not allowed to go, but Greg and Appley convinced Laura to join them despite being dressed only in her pajamas. In preparation for turning in for the night, Laura had made Greg a vodka and orange

juice mixed drink; so, she took the drink with her. That was the last time Quinton saw the three that night.

Laura testified that the Appley camper was about a third of a mile from the cabin. They were going to check the camper to be sure the pipes did not freeze, and Greg and Appley were planning to look out over an adjacent cornfield for wild animals. They never saw any wildlife and never made it to Appley's camper. Laura testified that Greg was bragging about his car, a 2006 Chrysler 300, then he simply "pressed the gas and accelerated through [a] little straight-away there . . . . He never let off the gas." The speed limit in the area was 55 mph. Laura saw they were approaching a curve and because of the car's acceleration past 55 mph, she knew they were traveling "way above the posted speed limit."

The next morning, Officer Tony Osteen of the State Highway Patrol arrived at the accident site shortly after 9:00 a.m. to find Greg's Chrysler 300 sitting in a cornfield. The first gouge marks in the field were fifty feet from the roadside. After flipping and rolling, the vehicle had come to rest 217 feet from its initial point of impact.

EMT John Constance was also on the scene. He found Laura lying in the vehicle's backseat. Appley was found thirty yards from the car with faint vital signs. Greg was found dead approximately seventy yards from the car. Constance saw no alcoholic beverage containers in the vehicle. Officer Osteen later interviewed Laura while she was in the hospital. He testified absent objection that she related to him that Greg had two drinks prior to eating.

Laura incurred $31,853.77 in medical bills, and on 16 May 2006, she sued the estate of Greg Howard for negligence. Linda Trantham, administratrix of the estate of Greg Howard, answered Laura's complaint and pled that Laura was contributorily negligent "in that she knowingly entered the vehicle with an intoxicated driver . . . [and] failed to use ordinary care to protect herself . . . . Such actions . . . amount to contributory negligence . . . ."

At trial, Trantham presented evidence by Dr. Diana Garside that at the time of death Greg had a blood alcohol content of 70 milligrams per deciliter (0.07). However, the trial court determined there was no evidence that Laura was aware of Greg's intoxication and thus did not submit the issue of contributory negligence to the jury.

After the close of the evidence, the jury determined that Laura was injured by the negligence of Greg and awarded her $275,000.00.

On 9 October 2007, the trial court entered judgment consistent with the jury verdict. Trantham appeals and Laura cross-appeals.

On appeal, Trantham raises the following four arguments: the trial court erred (I) in failing to instruct the jury on the theory of contributory negligence; (II) in granting Laura's motion in limine to exclude evidence of a "baggie" containing white powder; (III) in denying Trantham's Rule 59 motion; and (IV) in denying Trantham's Rule 60 motion.

On cross-appeal, Laura argues that the trial court erred in failing to submit to the jury the issue of gross negligence.

*I*

[1] Trantham argues that the trial court erred by failing to instruct the jury on the theory of contributory negligence. We disagree.

"[T]he trial court has wide discretion in presenting the issues to the jury and no abuse of discretion will be found where the issues are sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause." *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 645, 643 S.E.2d 28, 34 (2007) (citations and quotations omitted). "Under an abuse of discretion standard, we defer to the trial court's discretion and will reverse its decision only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Gibbs v. Mayo*, 162 N.C. App. 549, 561, 591 S.E.2d 905, 913 (2004) (citation and internal quotations omitted).

For a defendant driver accused of negligence to establish the contributory negligence of a plaintiff passenger, three elements must be satisfied.

The defendant must prove that (1) the driver was under the influence of an intoxicating beverage; (2) the passenger knew or should have known that the driver was under the influence of an intoxicating beverage; and (3) the passenger voluntarily rode with the driver even though the passenger knew or should have known that the driver was under the influence of an intoxicating beverage.

*Watkins v. Hellings*, 321 N.C. 78, 80, 361 S.E.2d 568, 569 (1987) (citations omitted). " 'Under the influence' has been defined as when a person has drunk a sufficient quantity of intoxicating beverage to

cause him to lose the normal control of his bodily or mental faculties to such an extent that there is an appreciable impairment of either or both of these faculties." *Jansen v. Collins*, 92 N.C. App. 516, 518, 374 S.E.2d 641, 643 (1988) (citation omitted).

> The standard to establish whether a passenger should have known that the driver was under the influence is that of an ordinarily prudent man. If the passenger exercises the degree of care that an ordinarily prudent man under similar circumstances would have used, then his claim will not be barred.

*Taylor v. Coats*, 180 N.C. App. 210, 213, 636 S.E.2d 581, 583 (2006) (citation omitted).

In *Jansen*, this Court held that a trial court's refusal to submit the issue of contributory negligence to a jury entitled the defendant to a new trial. *Jansen*, 92 N.C. App. at 519, 374 S.E.2d at 643-44. Both the plaintiff and the defendant testified that they had been drinking beer together and at the time of the accident had a wine cooler in the car. *Id.* at 519, 374 S.E.2d at 643. The defendant testified that he consumed nine beers while he and the plaintiff were together. Though the plaintiff testified that the defendant walked and talked normally, he was driving "a little bit too fast." The defendant testified that "he was definitely feeling the effects of the alcohol." On those facts, we held that the question of "whether [the] plaintiff was contributorily negligent in voluntarily riding in a car driven by [the] defendant when [the] plaintiff knew or should have known that [the] defendant was under the influence of intoxicating beverages was a question for the jury." *Id.* (citations omitted). *Compare Crowder v. N.C. Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 340 S.E.2d 127 (1986) (holding insufficient evidence to instruct the jury on the issue of contributory negligence where the defendant had been drinking liquor between 9:00 a.m. and noon, the plaintiff was aware of this when he accepted a ride, but there was no evidence of improper driving up until the time of the accident at 4:00 p.m.).

Here, Officer Osteen testified, absent objection, that when he interviewed Laura in the hospital she informed him that Greg had two beers prior to eating. Quinton testified that Greg drove normally—no speeding, no running off the road, or anything of that matter—while returning to their cabin from the dinner party. Laura testified that while she, Greg, and Appley were driving to see wildlife Greg didn't do anything out of the ordinary until he simply "pressed the gas and accelerated through [a] little straight-away . . . . He never

let off the gas." Otherwise, there was no testimony from any of the witnesses that Greg was observed drinking more than two beers and no testimony that he was observed to be under the influence of an impairing substance.

Unlike in *Jansen,* where there was evidence the plaintiff knew or should have known the defendant was under the influence of an impairing substance, in the instant case the evidence was insufficient to support such an inference. "Evidence which merely raises a conjecture as to plaintiff's negligence will not support a jury instruction." *Osetek v. Jeremiah,* 174 N.C. App. 438, 443-44, 621 S.E.2d 202, 206 (2005) (citation omitted). Therefore, the trial court did not abuse its discretion in refusing to submit the issue of contributory negligence to the jury. Accordingly, this assignment of error is overruled.

*II*

[2] Next, Trantham argues that the trial court erred in granting Laura's motion in limine to exclude evidence of a plastic "baggie" containing white powder found on Laura's person after the accident. Such evidence, Trantham argues, was relevant to determining Laura's credibility as well as supporting Trantham's claim of contributory negligence. We disagree.

"A motion in limine seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial, and is recognized in both civil and criminal trials. The trial court has wide discretion regarding this advance ruling and will not be reversed absent an abuse of discretion." *Nunnery v. Baucom,* 135 N.C. App. 556, 566, 521 S.E.2d 479, 486 (1999) (internal citations and quotations omitted).

Under our North Carolina Rules of Evidence, Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. R. Evid. 403 (2007).

Here, the trial court excluded evidence of a plastic "baggie" containing an undetermined white powdery substance found on Laura's person. At trial, during a voir dire of Laura, Trantham made an offer of proof with regard to the plastic "baggie." Laura testified that just prior to going for a ride with Greg and Appley, Greg handed her a baggy with a white, powdery substance. As she had no pockets, Laura

dropped the "baggie" in her underwear and later testified that she had no idea what it contained. Laura also testified that on prior occasions she had observed Greg using cocaine and smoking marijuana.

We note there was no evidence presented to the jury that on *this occasion* Greg had consumed or was under the influence of an illegal drug. Therefore, the trial court did not abuse its discretion in ruling that the probative value of the plastic "baggie" which contained an undetermined white powder was substantially outweighed by the danger of unfair prejudice. Accordingly, we overrule this assignment of error.

### III

**[3]** Next, Trantham argues that the trial court erred in denying her Rule 59 motion for a new trial. This contention is based on Trantham's arguments that the trial court erred by failing to submit the issue of contributory negligence to the jury and excluding from evidence the "baggie" of white powder found on Laura's person. We disagree.

"An appellate court should not disturb a *discretionary* Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Weber, Hodges & Godwin Commer. Real Estate Servs., LLC v. Cook*, 186 N.C. App. 288, 293, 650 S.E.2d 834, 838 (2007) (citation omitted) (original emphasis).

Based on the arguments previously addressed, we hold the trial court did not abuse its discretion in failing to allow Trantham's Rule 59 motion for a new trial. Accordingly, we overrule this assignment of error.

### IV

**[4]** Next, Trantham argues that the trial court erred in denying her Rule 60 motion for relief from judgment based upon newly discovered evidence. We disagree.

Under our North Carolina Rules of Civil Procedure, Rule 60(b)(2), relief from judgment or order,

> (b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for . . . :

(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . . .

N.C. R. Civ. P. 60(b)(2) (2007).

[However,] [f]or relief to be granted under Rule 60(b)(2) the failure to produce the evidence at the [original proceeding] must not have been caused by the moving party's lack of due diligence. The evidence must be such as was not and could not by the exercise of diligence have been discovered in time to present in the original proceeding.

*Harris v. Family Medical Center*, 38 N.C. App. 716, 719, 248 S.E.2d 768, 770 (1978) (citation omitted).

In *Harris*, this Court affirmed a trial court's denial of the plaintiff's Rule 60(b)(2) motion on the grounds that the plaintiff could have obtained a copy of a birth certificate prior to the hearing in the original proceeding. *Id.*

Here, Trantham spoke with Dr. Garside on 13 October 2007 after judgment had been entered 9 October 2007 and learned that the Office of the Chief Medical Examiner routinely retains blood samples for two years and furthermore Trantham could consent to the release of Greg's blood for private testing. On 30 October 2007, Trantham sent a letter authorizing the release of Greg's blood sample to NMS Labs in Willow Grove, Pennsylvania. On 15 November 2007, NMS labs released a toxicology report of their findings. According to the report, Greg's blood sample contained 56 mg/dL of ethanol; 140 ng/mL of cocaine; 86 ng/mL of cocaethylene—a cocaine/ethanol by-product; 1900 ng/mL of benzoylecgonine—a cocaine degradation product; and 39 ng/mL of methamphetamine. Trantham argues that this evidence, which she asserts bears upon Greg's state of impairment and Laura's knowledge of that impairment, supports her defense of contributory negligence.

The accident in this case occurred on 26 February 2006, the complaint was filed 16 May 2006, and the trial commenced 25 September 2007. On these facts, we hold the NMS findings could have been discovered with the exercise of due diligence in time to present them in the original trial. Therefore, the trial court did not err in denying Trantham's Rule 60(b) motion. Accordingly, this assignment of error is overruled.

**[5]** On cross-appeal, Laura argues the trial court erred in failing to submit to the jury the issue of gross negligence. We disagree.

> In determining or defining gross negligence, this Court has often used the terms 'willful and wanton conduct' and 'gross negligence' interchangeably to describe conduct that falls somewhere between ordinary negligence and intentional conduct. We have defined 'gross negligence' as 'wanton conduct done with conscious or reckless disregard for the rights and safety of others.'

*Yancey v. Lea,* 354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001) (citations omitted).

In *Berrier v. Thrift,* 107 N.C. App. 356, 420 S.E.2d 206 (1992), this Court held that the evidence submitted was sufficient for the trial court to instruct the jury on gross negligence. The defendant in *Berrier* offered to drive home a girl and her three companions. In their presence, the driver had consumed two beers. But, on the way home, the defendant failed to negotiate a turn and the vehicle rolled down a steep embankment. The girl died as a result. Evidence submitted at trial showed the defendant had a blood alcohol level of 0.184 two hours after the accident. Unknown to the passengers, the defendant had consumed eight beers within two hours of meeting the girl and her companions. The defendant testified that he knew that alcohol impairs anyone's ability to drive, that driving while impaired is a crime, that he had alcohol in his system when he drove the car and that there was a risk associated with his driving the car the night of the fatal accident.

This Court reasoned that where the defendant had consumed ten cans of beer within three hours of the accident, had a blood alcohol content of 0.184 two hours after the accident, was aware alcohol impairs a driver's reaction time, and knew that driving in his condition posed a risk, there was sufficient evidence to submit the issue of gross negligence to the jury. *Id. See also Pearce v. Barham,* 271 N.C. 285, 156 S.E.2d 290 (1967) (holding there was sufficient evidence to support a finding of willful and wanton conduct where, in a drizzling rain with slick tires, the defendant driver swerved back and forth across the roadway at 90 mph, failed to stop at a stop sign, lost control of his vehicle and injured the passengers); *Baker v. Mauldin,* 82 N.C. App. 404, 346 S.E.2d 240 (1986) (holding the issue of gross negligence was for the jury where, though there was some evidence the defendant was not driving as though intoxicated, there was evidence the defendant was driving 100 mph immediately prior to the acci-

dent); *compare Yancey*, 354 N.C. 48, 550 S.E.2d 155 (holding insufficient facts to find gross negligence where a collision occurred after a driver, traveling between 55 and 65 mph in a 55 mph zone, attempted to pass a truck that turned into the driver's path).

Here, the evidence presented to the jury indicates that Greg was driving normally, began to brag about his car, and simply "pressed the gas and accelerated through [a] little straight-away there . . . ." The speed limit in the area was 55 mph. Laura saw they were approaching a curve and because of the car's acceleration past 55 mph, she knew they were traveling "way above the posted speed limit."

On these facts, we cannot say the trial court erred in failing to submit the issue of gross negligence to the jury. Accordingly, this assignment of error is overruled.

Affirmed.

Chief Judge MARTIN and Judge BEASLEY concur.