IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-23

Filed 6 August 2024

Franklin County, No. 21 CVS 470

SANDRA CHAPPELL, ADMINISTRATOR OF THE ESTATE OF SUSAN RENEE CHAPPELL (deceased), Plaintiff,

v.

SHEMARO DEANN WEBB and LADOROTHY BREANNA FOREMAN, Defendants.

Appeal by defendants from judgment entered 28 April 2023 by Judge Cynthia K. Sturges in Franklin County Superior Court. Heard in the Court of Appeals 15 May 2024.

> *Bennett Guthrie PLLC, by Mitchell H. Blankenship, Rodney A. Guthrie, and Joshua H. Bennett, for defendants-appellants.*

> *White & Stradley, PLLC, by J. David Stradley and Ann C. Ochsner, and Henson Fuerst, P.A., by Thomas Henson, Jr., for plaintiff-appellee.*

DILLON, Chief Judge.

This case arises from a tragic two-vehicle accident resulting in the fatality of the driver of one of the vehicles. At the conclusion of the trial, the estate of the deceased victim was awarded $40 million in compensatory and punitive damages from two defendants: the intoxicated driver of the other vehicle and the owner of that other vehicle. After careful review, we conclude the trial was free from reversible error and affirm the trial court's rulings on Defendants' post-trial motions.

## I. Background

On the evening of 18 September 2020, Defendant Shemaro Deann Webb was driving a Nissan Altima southbound on US Highway 401 toward Raleigh while under the influence of alcohol. Defendant LaDorothy Breanna Foreman was a passenger and owned the Nissan Altima.

On the same highway, Susan Renee Chappell was driving northbound.

At some point, Defendant Webb crossed the center line of the highway while attempting to pass another southbound vehicle in a no-passing zone. Her vehicle collided head-on with Ms. Chappell's vehicle in the northbound lane. Ms. Chappell died later that night due to injuries sustained in the accident.

Plaintiff Sandra Chappell, as the administrator of Ms. Chapell's estate, brought a wrongful death suit against Defendants, seeking to recover damages pursuant to North Carolina's wrongful death statutes. Plaintiff alleged that Defendant Webb was negligent in driving the vehicle and that Defendant Foreman was negligent by entrusting Defendant Webb with her vehicle.

At the conclusion of the trial, the jury returned verdicts against Defendants. The jury found Defendants jointly and severally liable for $15 million in compensatory damages. The jury found the driver Defendant Webb liable for $5 million in punitive damages and the vehicle owner Defendant Foreman liable for $20 million in punitive damages. The trial court entered a judgment consistent with the verdicts. Defendants moved for post-trial relief from the judgment. Defendant

Foreman separately moved for a judgment notwithstanding the verdict ("JNOV"). The trial court denied both motions. Defendants appeal.

## II. Analysis

On appeal, Defendant Foreman argues that the trial court erred in denying her motion for JNOV. And both Defendants argue that the trial court erred in denying their other post-trial motions for relief from the large jury verdicts. We address each argument in turn.

### A. Negligent Entrustment Claim & Motion for JNOV

We first address the vehicle owner Defendant Foreman's argument that she was entitled to JNOV. She contends Plaintiff did not present sufficient evidence to prove negligent entrustment. Alternatively, she contends that, even if there was sufficient evidence to show she was liable for negligent entrustment, there was insufficient evidence warranting an award of punitive damages against her.

Whether a party is entitled to a motion for JNOV is a question of law, which we review *de novo*. *Est. of Savino v. Charlotte-Mecklenburg Hosp. Auth.*, 375 N.C. 288, 293, 847 S.E.2d 677, 681 (2020). As our Supreme Court has instructed:

> In making its determination of whether to grant the motion, the trial court must examine all of the evidence in a light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences that may be drawn from that evidence. If, after undertaking such an analysis of the evidence, the trial judge finds that there is evidence to support each element of the nonmoving party's cause of action, then the motion for [JNOV] should be denied.

*Abels v. Renfro Corp.*, 335 N.C. 209, 214–15, 436 S.E.2d 822, 825 (1993) (internal marks omitted).

Here, Defendant Foreman contends Plaintiff failed to prove her negligent entrustment claim. Our Supreme Court has explained that to prove negligent entrustment, the plaintiff must show two things, namely that (1) the defendant car owner entrusted her car to another *and* (2) the car owner knew or reasonably should have known the other person was in a condition where she was likely to cause injury to others in her driving:

> Negligent entrustment is established when the owner of an automobile entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver, who is likely to cause injury to others in its use. Based on his own negligence, the owner is liable for any resulting injury or damage proximately caused by the borrower's negligence.

*Tart v. Martin*, 353 N.C. 252, 254, 540 S.E.2d 332, 334 (2000) (internal citations and marks omitted). The entrustment element "requires *consent from the defendant, either express or implied*, for the third party to use the instrumentality in question." *Bridges v. Parrish*, 222 N.C. App. 320, 327, 731 S.E.2d 262, 267 (2012) (emphasis added), *aff'd*, 366 N.C. 539, 540, 742 S.E.2d 794, 796 (2013).

Regarding the entrustment element, Defendant Foreman suggests that Plaintiff must show more than that Defendant Foreman simply *consented* to allowing Defendant Webb to drive her car: Plaintiff must show that Defendant Foreman *voluntarily delivered possession* of her vehicle to Defendant Webb. Defendant

- 4 -

Foreman cites to North Carolina Pattern Jury Instruction 102.68, which the trial court gave to the jury and which includes a requirement that the jury find that a negligent entruster "voluntarily gave possession" of her motor vehicle to the driver.[1] Our Supreme Court's jurisprudence, however, does not suggest that there is a heightened burden beyond that the owner consented, either expressed or implied, to allowing one she knew or should have known to be incompetent/reckless to drive her car. *See Bridges,* 222 N.C. App. at 327, 731 S.E.2d at 267 (holding that a plaintiff show the defendant-owner gave express or implied consent); *Swicegood v. Cooper*, 341 N.C. 178, 179, 459 S.E.2d 206, 206 (1995) (holding that the entrustment element is met where it is shown the owner "had given [the driver] permission to drive the automobile"). *See also State v. Warren*, 348 N.C. 80, 119, 499 S.E.2d 431, 453 (1998) (recognizing that a "pattern jury instruction . . . has neither the force nor the effect of law[.]").

We conclude that the issue of Defendant Foreman's negligent entrustment was properly given to the jury. In so holding, we note that in answering Plaintiff's complaint, Defendant Foreman admitted that Defendant Webb drove her vehicle "with [her] express knowledge, express consent, and express authorization[.]" *See Champion v. Waller*, 268 N.C. 426, 428, 150 S.E.2d 783, 785 (1966) ("Facts alleged in the complaint and admitted in the answer are conclusively established by the

---

[1] N.C.P.I. Civil 102.68 is titled "Negligence of Owner Entrusting Motor Vehicle to Incompetent, Careless or Reckless Person."

admission, it not being necessary to introduce such allegations in evidence."). In other words, there is no requirement that a plaintiff provide proof that the entruster handed the keys to the driver but rather merely that the entruster at least impliedly consented to the driver driving her car.

We further note that our General Assembly has provided that evidence of vehicle ownership (here, Defendant Foreman's ownership of the vehicle) is "prima facie evidence" that the driver (here, Defendant Webb) was driving the vehicle with the owner's consent and knowledge:

> In all actions to recover damages for . . . the death of a person, arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be prima facie evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose.

N.C. Gen. Stat. § 20-71.1(a) (2023).

Finally, we note there was sufficient evidence offered from which the jury could infer that Defendant Foreman entrusted her vehicle to Defendant Webb. Indeed, the evidence showed that Defendant Webb was in the backseat of the vehicle sometime prior to the accident but that at some point prior to the accident she became the driver while Defendant Foreman came to be in the backseat.

Accordingly, the trial court did not err in denying Defendant Foreman's motion for JNOV.

B.  Amount of Damages/Motion for New Trial

Defendants jointly make arguments concerning the *amount* of compensatory and punitive damages awarded by the jury.

First, Defendants contend that the trial court abused its discretion in denying Defendants' request for a new trial.  Rule 59 of our Rules of Civil Procedure allows the trial court to grant a new trial on the grounds that "excessive or inadequate damages appear[ ] to have been given under the influence of passion or prejudice" or "insufficiency of the evidence to justify the verdict or that the verdict is contrary to law[.]"  N.C. Gen. Stat. § 1A-1, Rule 59(a)(6)–(7) (2023).

We review a trial court's refusal to grant a new trial based on an argument that the damages awarded were excessive for an abuse of discretion:

> It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge.

*Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982).  "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice."  *Id.* at 487, 290 S.E.2d at 605.

Defendants argue that the awards must have been the result of passion or

- 7 -

prejudice because "[c]ases with similar evidence have produced verdicts several orders of magnitude lower." Indeed, the $40,000,000 *total* verdict appears to be the largest drunk driving verdict in North Carolina history.

In analyzing the verdict, we consider the compensatory and punitive awards separately.

The jury awarded $15 million in <u>compensatory damages</u>.

Defendants direct us to a federal defamation case arising out of North Carolina that was heard in the Fourth Circuit: *Eshelman v. Puma Biotechnology, Inc.* 2 F.4th 276 (2021). In *Eshelman,* the Fourth Circuit concluded that the trial court abused its discretion in denying the defendant's motion for a new trial. *Id.* at 285. The court held that "the jury awarded excessive damages that the evidence could not justify." *Id.* at 283. In determining that the damages were excessive, the court compared the case's damages award to the damages awarded in similar defamation cases, noting that "[o]ne would expect ample evidence of the harm suffered by [the plaintiff] to support a jury award ten times the size of the largest defamation awards in North Carolina history." *Id.*

Defendants ask us to employ *Eshelman*'s "damages norm" test to determine if the verdict here was excessive when compared to the evidence presented and the typical damages awarded in these cases. Defendants point to other wrongful death cases in which the plaintiffs presented more evidence than presented here, but where the verdict total was much lower than the verdict total here. *See, e.g., Haarhuis v.*

*Cheek*, 255 N.C. App. 471, 805 S.E.2d 720 (2017) ($4.25 million compensatory damages award for drunk driving incident); *Boyd v. L.G. DeWitt Trucking Co., Inc.*, 103 N.C. App. 396, 405 S.E.2d 914 (1991) ($869,200 compensatory damages award for drunk driving incident). Defendants argue that a comparison of this case to other similar cases demonstrates that the compensatory damages award here was the influence of passion and prejudice.

Our Supreme Court, however, has previously disapproved of the implementation of a test similar to Defendants' proposed "damages norm" test:

> It would serve no purpose to engage in a great debate over the various policies which might or might not favor the adoption of a specific standard to evaluate and limit a trial judge's discretionary power to grant a new trial if he believes the jury has awarded inadequate or excessive damages. It suffices to say that the overwhelming precedent of this court discloses no compelling reason or need for the implementation of such a rule in North Carolina. Moreover, we are not persuaded that the appellate use of a vague test to measure the "reasonable range" of a given verdict's amount would provide a more effective, consistent or precise method of determining whether a trial judge has exceeded the bounds of discretion in the grant or denial of a new trial.

*Worthington*, 305 N.C. at 485, 290 S.E.2d at 604 (cleaned up). Accordingly, we cannot adopt such a test.

Further, we note the federal case applying North Carolina law cited by Plaintiff, where a $32.7 million compensatory damages award in a wrongful death action was sustained though there was a lack of evidence concerning the economic

damages suffered. *See Finch v. Covil Corp.*, 972 F.3d 507, 516–18 (4th Cir. 2020) (applying North Carolina law and upholding the jury verdict).

And though Plaintiff did not present evidence of Ms. Chappell's anticipated future income nor of her medical and funeral expenses, Plaintiff did present other evidence to justify a compensatory award.

For instance, there was evidence concerning the pain and suffering Ms. Chappell suffered during the last hour of her life. She suffered numerous bodily injuries, including multiple open fractures (bones protruding through her skin); she was conscious and experiencing pain while trapped in her vehicle (extrication by firefighters took approximately thirty minutes) and for part of the ambulance ride; she suffered from respiratory distress and repeatedly expressed an inability to breathe, which would have been "extremely terrifying," "panic inducing," and caused "an impending sense of doom"; and she suffered a traumatic cardiac arrest in the ambulance en route to the hospital.

Also, Plaintiff presented evidence of Ms. Chappell's family's loss, particularly the loss suffered by her two children. The jury was free to award damages based on this evidence. Our Supreme Court has instructed that the award is not limited to "income-focused measure[s] of damages" as may have been the case in the distant past, but may be based on services, society, and companionship, including victims who may not have produced an income, like "a child, homemaker or handicapped person." *DiDonato v. Wortman*, 320 N.C. 423, 429, 358 S.E.2d 489, 492 (1987).

Our Court has previously stated that the size of the award itself cannot establish that the jury was influenced by passion or prejudice. *See Everhart v. O'Charley's Inc.*, 200 N.C. App. 142, 161, 683 S.E.2d 728, 742 (2009). Moreover,

> [t]he present monetary value of the decedent to the persons entitled to receive the damages recovered will usually defy any precise mathematical computation. Therefore, the assessment of damages must, to a large extent, be left to the good sense and fair judgment of the jury—subject, of course, to the discretionary power of the judge to set its verdict aside when, in his opinion, equity and justice so require.

*Brown v. Moore*, 286 N.C. 664, 673, 213 S.E.2d 342, 248–49 (1975) (citations omitted).

The structure of the trial itself in this case cuts against Defendants' argument that the jury was influenced by passion or prejudice (in determining the compensatory damages award). The trial was *not* bifurcated. Rather, this jury was responsible for awarding both compensatory *and* punitive damages during one stage. Thus, the jury knew it would have the opportunity to punish Defendants with its punitive damages award and, therefore, would not need to (inappropriately) punish Defendants with its compensatory damages award.

To be sure, to some people, and perhaps even to some judges, a compensatory damages award of $15 million based on a death involving less than an hour of suffering and where no "economic damages" evidence was introduced is excessive. However, based on the foregoing, our review of the record, and the relevant case law, we cannot say that the trial court abused its discretion in refusing to set aside the

compensatory damages award and grant a new trial on that issue. *See Justus v. Rosner*, 371 N.C. 818, 832, 821 S.E.2d 765, 774 (2018) ("[T]he plain language of [Rule 59] states explicitly that . . . the only relief that the trial court may award to plaintiff [based on an excessive or inadequate compensatory damage award] is a new trial.").

We also disagree with Defendants' arguments concerning Plaintiff's counsel's alleged "repeated inflammatory statements" as evidence that the jury awarded high damages under the influence of passion or prejudice.

Defendants failed to object at trial to any statement made during Plaintiff's opening statement and closing argument that they now contest on appeal. Thus, we review only whether the trial court committed reversible error by failing to intervene *ex mero motu* because the argument "strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord[.]" *State v. Huey*, 370 N.C. 174, 179, 804 S.E.2d 464, 469 (2017) (citations omitted). *See also State v. Gladden*, 315 N.C. 398, 417, 340 S.E.2d 673, 685 (1986) (extending this standard of review to opening statements where no timely objection was made).

Defendants take issue with the opening statement, in which Plaintiff's counsel stated, "Four hundred and twelve. That is how many North Carolina citizens are slaughtered every year by drunk drivers on our highways." Defendants also contest counsel's statement that "if it wasn't [Ms. Chappell], it could have been anybody."

Here, we conclude these statements did not exceed the "wide latitude" afforded

to trial counsel during opening statements. *See Gladden*, 315 N.C. at 417, 340 S.E.2d at 685 ("Trial counsel is generally afforded wide latitude in the scope of the opening statement and is generally allowed to state what he intends to show so long as the matter may be proved by admissible evidence."). Perhaps these statements are some evidence that the jury's verdict was based, at least in part, on passion and prejudice rather than on the evidence. However, we cannot say that the trial court abused its discretion in not making that determination based on the record before us.

The jury awarded Plaintiff $25 million in punitive damages.

We hold that that trial court did not err in failing to disturb the jury's finding Defendants liable for punitive damages or for the amounts awarded.

First, the evidence presented supports the jury's finding of liability with respect to both Defendants, as explained below.

Our General Assembly has provided that "[p]unitive damages may be awarded . . . *to punish* a defendant for egregiously wrongful acts and *to deter* the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1 (emphasis added). That body has further provided that punitive damages may be awarded where it has been proven that a defendant "is liable for compensatory damages" and that the defendant engaged in "willful or wanton conduct" by "clear and convincing evidence." *Id.* § 1D-15.

Defendant Foreman argues that the issue of punitive damages based on *her negligent entrustment* should not have been presented to the jury. Specifically,

Defendant argues that the evidence presented at trial did not prove by *clear and convincing evidence* that Defendant Foreman knew Defendant Webb was drunk when she allowed Webb to drive her vehicle. We disagree. Rather, we conclude there was evidence from which the jury could infer that Defendant Foreman knew Defendant Webb was drunk and that Defendant Foreman acted wantonly or willfully in negligently entrusting the vehicle to Defendant Webb.

For instance, a trooper who investigated the accident testified that she observed open beer cans outside and inside the Nissan Altima and smelled a strong odor of alcohol before even sticking her head inside the vehicle. An expert in blood alcohol physiology, pharmacology, and the effects of alcohol on human performance and behavior testified that, in his opinion, Defendant Webb was "significantly impaired, to the point of being intoxicated" at the time of the wreck and would have shown "very obvious signs of intoxication" at the time of the wreck and in the fifteen to twenty minutes prior to the wreck, such as slurred speech and difficulty in locomoting (*e.g.*, walking, picking up items, standing upright). Defendant Webb herself testified regarding how much she drank and admitted to smoking marijuana as well, much of which was consumed in Defendant Foreman's presence. Also, there was evidence that in 2016, five years prior to the accident, Defendant Webb had been pulled over and cited for drunk driving (to which she pleaded guilty) while driving Defendant Foreman's vehicle and while Defendant Foreman was a passenger.

And there is no question that there was sufficient evidence to show Defendant

Webb's liability for punitive damages. She drove the vehicle in an impaired state after consuming a large amount of alcohol.

Second, regarding *the amount* of the punitive damages awarded, we note that our General Assembly has *not* placed a cap on such awards where the conduct involves impaired driving. *See* N.C. Gen. Stat. § 1D-26. In any event, the awards in this case total $25,000,000 and do not exceed the statutory limit of three times the the compensatory damages award for cases generally. *See* N.C. Gen. Stat. § 1D-25(b).

In setting the amount, the jury must consider the purposes contained in Section 1D-1 and may consider other matters set forth in Section 1D-35. *See* N.C. Gen. Stat. §§ 1D-1, 1D-35.

The evidence offered here showed that *punishing* these Defendants was appropriate since they had engaged in similar drunk driving/negligent entrustment conduct before, as shown by the 2016 drunk driving incident. This evidence supports a determination that a punitive damages award may be necessary *to deter others as well as these* Defendants from engaging in similar conduct in the future.

As to the factors which may be considered by the jury, evidence showed that Defendants' conduct was "reprehensib[le,]" as the conduct involved drunk driving and allowing one obviously impaired to drive; that there was a "likelihood . . . of serious harm"; that Defendants had an "awareness of the probable consequences of [their] conduct," based on the 2016 drunk driving incident and a common sense understanding that one should not drive while impaired; that Defendants had

engaged in "similar past conduct" based on the 2016 incident; that "the duration of [Defendants'] conduct was not momentary, but rather, they had been drinking for several hours prior to driving; that "[t]he actual damages suffered" by Ms. Chappell were high, as she lost her life; and that Defendant Foreman "conceal[ed]" her culpability by never admitting she bore any blame. *See* N.C. Gen. Stat. § 1D-35(2).

Defendants take issue with a statement made by Plaintiff's counsel during closing, urging the jury to "speak loud" with their verdict:

> The size of your verdict is the volume with which you speak. A million dollars? That won't carry out those doors back there. A few million dollars might be heard at the town limits, but if you want your voices to be heard in Raleigh, and Durham, and Oxford, and Smithfield, or across the state, or across the nation, you're going to have to speak louder.

Here, counsel's statement was limited to punitive damages. We conclude that this statement did not cross the line. The jury is entitled to "speak loud" with its punitive damages award by sending a message of deterrence to people who consider drunk driving or negligently entrusting a vehicle to a drunk driver. *See* N.C. Gen. Stat. § 1D-1 ("Punitive damages may be awarded . . . to deter the defendant and others from committing similar wrongful acts."). And again, we cannot say that the trial court erred by not disturbing the punitive awards of the jury based on the record before us.

Finally, Defendant Foreman argues that her liability for punitive damages ($20 million) is disproportionately higher than that of the driver Defendant Webb ($5 million). However, there are several possible reasons why Defendant Foreman's

punitive damages are four times the amount of Defendant Webb's. For instance, Defendant Webb pleaded guilty to criminal charges arising from this accident and is currently serving a term of imprisonment for thirteen to sixteen years, whereas Defendant Foreman was not criminally punished. Additionally, Defendant Webb expressed some remorse during her testimony, whereas Defendant Foreman did not take any responsibility. We, therefore, cannot say the jury's awards were unlawful.[2]

### III.    Conclusion

Defendants received a fair trial. There was sufficient evidence presented to submit the issues of liability for compensatory and punitive damages to both Defendants. The jury rendered its verdict. The trial court did not err by denying Defendant Foreman's motion for JNOV and it did not abuse its discretion by denying Defendants' motion for a new trial.

AFFIRMED.

Judges ARROWOOD and STADING concur.

---

[2] We note that the United States Supreme Court has held that punitive damages awards implicate Due Process concerns. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 429 (2003); *Lacey v. Kirk*, 238 N.C. App. 376, 395, 767 S.E.2d 632, 646 (2014). However, Defendants made no express argument as to how the award violated their Due Process rights; and, therefore, we do not consider any such argument.